[Crim. No. 34336. Second Dist., Div. Three. Feb. 28, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY BURKE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Nicholas G. Spirtos, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Roy C. Preminger and Owen Lee Kwong, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**POTTER, Acting P. J.**—Defendant Timothy Burke appeals from the judgment of conviction of two counts of attempted robbery (Pen. Code, §§ 664/211) and one count of petty theft (Pen. Code, § 488).

The evidence, viewed in the light most favorable to the judgment (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 570 [146 Cal.Rptr. 859, 580 P.2d 274]) revealed that on June 26, 1978, defendant, wearing a pair of black-framed eyeglasses and a navy blue watch cap, walked up to Theresa Figueroa, a cashier in J. J. Newberry's in Ventura, with a pair of the store's sunglasses. After Figueroa rang up the amount of the purchase, defendant, with his right hand in his pocket, feigning a weapon, stated: "'Give me the money or I will blow your brains out, I have a gun.'" Figueroa refused. Startled by the approach of another employee, defendant then ran out of the store, leaving behind the sunglasses with his fingerprints on them.

On June 28, defendant attempted to rob Evelyn Finch in the parking lot of the Loma Vista Medical Clinic in Ventura. Defendant reached into her car and grabbed her purse which was hanging by its strap from her shoulder. She struggled to retain the purse and screamed. Christina Escobito heard the screams, ran toward Finch's car and yelled at defendant to "'Leave her alone.'" Defendant then fled without the purse.

On June 30, Ramona Amundsen was sitting with her two-year-old granddaughter outside the Cabrillo Medical Building in Ventura when defendant grabbed her purse which was lying on the bench between her and the child. Amundsen ran after him, saw defendant's beige station wagon drive away, and noted down the description and license number. Meanwhile, Lisa Marshall had seen defendant, holding a woman's purse in his hand, jump into the front seat of that station wagon and had also noted the license number.

Within a few days of the incidents, Figueroa, Finch, Escobito and Marshall were shown photographic displays. Escobito identified defendant; none of the others made any identification.[1] On July 14, the day after defendant's arrest, a five man in-person lineup was held. Finch, Escobito, Marshall and Amundsen selected defendant as the assailant in the attempts occurring on June 28 (count II) and June 30 (count III). Figueroa, the victim on June 26 (count I) was not present at the lineup since she was on vacation. Figueroa identified defendant at the preliminary hearing when defense counsel, on cross-examination, asked her if he was the man who had attempted to rob her. Prior to trial, defendant challenged the eyewitnesses' identifications and specifically

---

[1]Amundsen, who had stated that she could only recognize defendant from the back and by his build, was not asked to make any photographic identification.

moved to compel an in-person lineup to be conducted for Figueroa. The court found that the July 14 lineup was fair, denied the motion for a new in-person lineup, but ordered, instead, that the photographs taken of the July 14 lineup showing the subjects in watch caps and eyeglasses be shown to Figueroa in the presence of both counsel. Subsequently, Figueroa selected defendant from that set of photographs.

At trial, the five eyewitnesses identified defendant, a fingerprint expert testified that the prints on the Newberry sunglasses matched defendant's, and Amundsen and Marshall identified defendant's car and license plate number as the one in which the assailant in count III had fled. The defense theory was that defendant was a victim of misidentification. In cross-examination of prosecution eyewitnesses, direct examination of two police officers who served as subjects in the in-person lineup and argument, the defense attempted to undercut the validity of the identifications by focusing on prior failures to identify defendant and claimed dissimilarities among the subjects in the in-person and photographic displays. The defense also attempted to explain away the fingerprint identification by the testimony of defendant's sister that she had seen him trying on sunglasses in Newberry's in the third week of June.

At the close of testimony, defendant moved to strike all identification testimony, for "dismissal" pursuant to Penal Code section 1118.1 and for mistrial on the grounds that the in-court identifications were tainted by impermissibly suggestive pretrial in-person and photographic identification procedures. The motions were denied. The court found that the lineups were fair.

The jury found defendant guilty of attempted robbery of Figueroa (count I), attempted robbery of Finch (count II) and the lesser included offense of petty theft from Amundsen (count III).

Defendant had waived his right to a jury trial on the validity of two alleged prior offenses and subsequently admitted the allegations in the information that (1) in September 1974 he was convicted of robbery in Santa Barbara County and served a term in state prison, and (2) in March 1975, he was convicted of robbery in Ventura County and served a term in state prison. Defendant, however, contested the issue of whether, for purposes of enhancement, these two prior terms qualified as separate prison terms within the meaning of Penal Code section

667.5, subdivision (g). The court found, over defendant's objection, that he had served two separate prior prison terms and enhanced his sentence by two years on this basis.

The court sentenced defendant to the middle base term of two years on count I, the principal term, and ordered that for count II, the subordinate term, "the defendant be confined in the state prison for a period of eight months to run consecutively...to the term imposed on Count 1." Defendant was further sentenced to county jail for a period of six months on count III, said sentence to run concurrently with the sentence imposed on counts I and II. Defendant received 133 days' credit for time spent in presentence custody.

Subsequently, the trial court, on its own motion, modified the judgment in order to comply with Penal Code section 1170.1, subdivision (f), by staying eight months of the original term of imprisonment imposed for a total unstayed prison term sentence of four years.

## Contentions

Defendant contends that (1) unfair pretrial identification procedures deprived him of due process of law; (2) enhancement of his sentence for two prior separate prison terms was improper; and (3) the trial court's failure to state its reasons for imposing consecutive sentences necessitates remand for resentencing. The People controvert all of the above contentions.[2]

## Discussion

### Summary

Substantial evidence supports the trial court's findings that the pretrial lineups were fair. Defendant, however, should only have received a one-year enhancement for his priors since, under a proper construction of Penal Code section 667.5, he served only one prior separate prison

---

[2]We need not discuss defendant's additional contention that he is entitled to good time/work time credits for presentence custody. In *People v. Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], our Supreme Court recently held, on equal protection grounds, that such credits must be awarded retroactively, if earned, and stated: "We anticipate that the Department of Corrections will fashion an administrative procedure by which the right to such credits may be determined...." (*Id.*, at p. 507, fn. 7.)

term. In view of the need to strike one year of the enhancement, the effect of that striking on the previously modified judgment, and the failure to state the reasons for consecutive sentencing, we will remand the case for resentencing and affirm the judgment in all other respects.

*The Pretrial Identification*
*Procedures Were Fair*

The pretrial identification procedures did not deprive defendant of due process of law. Substantial evidence supports the trial court's findings[3] that the lineups were fair. (See *People* v. *Sandoval* (1977) 70 Cal.App.3d 73, 84 [138 Cal.Rptr. 609]; *People* v. *Gomez* (1976) 63 Cal.App.3d 328, 336 [133 Cal.Rptr. 731].)

The governing principles were recently reiterated in *People* v. *Blair* (1979) 25 Cal.3d 640, 659 [159 Cal.Rptr. 818, 602 P.2d 738], where our Supreme Court stated: "The United States Supreme Court has held that a violation of due process occurs if a pretrial identification procedure is 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].) Whether due process has been violated depends on 'the totality of the circumstances' surrounding the confrontation. (*Stovall* at p. 302 [18 L.Ed.2d at p. 1206].)"

Defendant asserts that the July 14 in-person lineup was "unnecessarily suggestive" because of dissimilarity in appearance between defendant and the other persons in the lineup. We disagree. In *Blair*, our Supreme Court pointed out that though there is some validity to a defendant's assertion "that the 'sine qua non of lineup fairness' is similarity in appearance between the accused and the other participants.... 'there is no requirement that a defendant in a lineup must be surrounded by people nearly identical in appearance.'" (*Id.*, at p. 661.)

▮ There was no marked disparity in appearance between defendant and the four other persons in the July 14 in-person lineup at which Es-

---

[3]Preliminarily, we reject the People's contention that this issue was not properly raised below and is, therefore, not cognizable on appeal. As the previously recited facts show, the defense challenged the identification procedures in motions to compel a separate in-person lineup for Figueroa, to strike all witness identifications, for "dismissal" pursuant to Penal Code section 1118.1, and for mistrial, and the trial court ruled that the identification procedures were fair.

cobito, Marshall, Finch and Amundsen identified defendant. The distinctions in actual height, weight and age were not great.[4]

More importantly, the photograph of the lineup in evidence demonstrates that defendant does not appear significantly different from the other participants. (*Ibid.*) Defendant was one of five young male Caucasians with short brown hair, no beard or mustache, who all appeared to be about the same height and build and were dressed in loose-fitting, bulky, orange coveralls which disguised any weight difference.[5]

█ Nor is there any merit to defendant's complaint that the use of pretrial photographic displays was unnecessary and tainted later corporeal identification. "While the danger of using photographs for identification prior to the corporeal lineup has been recognized...under the circumstances here the procedure was clearly justified." (*Id.*, at p. 660.) The eyewitnesses were shown the photographic displays within a few days of the crimes; it was obviously important to try to determine the identity of the assailant as soon as possible. Defendant was not arrested until July 13 and the corporeal lineup then occurred the following day.[6]

█ Furthermore, it cannot be said that repetitive use of these photographic lineups impermissibly primed the witnesses to pick out defendant in court. Amundsen was never shown any photographs. Escobito, Finch and Marshall were shown only one set of six color photographs containing one picture of defendant, and only Escobito made an identification. Figueroa was shown that set and also a set of six small

[4]The following tabulation shows the age, height and weight of the men in the in-person lineup. (Defendant was No. 2.)

| No. | Age | Height | Weight |
| --- | --- | --- | --- |
| 1 | 19 | 5'10" | 165 |
| 2 | 26 | 5'8" | 130 |
| 3 | 21 | 5'10" | 170 |
| 4 | 19 | 5'9" | 115 |
| 5 | 28 | 5'8" | 120 |

[5]Defendant apparently does not contend on appeal that Figueroa's identification of him from the photographs of the July 14 lineup participants in watch caps and eyeglasses was unfair because of dissimilarities in appearance. Nor could such a claim prevail. The photographs, which we have viewed, demonstrate to the contrary.

[6]Indeed, in *People v. Rist* (1976) 16 Cal.3d 211, 217, footnote 5 [127 Cal.Rptr. 457, 545 P.2d 833], where the defendant, unlike here, was in custody when the photographic session was conducted, the court noted that though "it might have been preferable to hold a corporeal lineup rather than a photographic session as the first identification procedure...there was no denial of due process in the otherwise fairly conducted photographic identification."

black and white photographs (including one of defendant) at two different times about three days after the crime but did not select anyone.[7] The record further discloses that there was nothing suggestive about the photographs themselves or the procedures by which they were displayed.

*Defendant Served Only One*
*Separate Prior Prison Term*

The documentary evidence on the issue of whether defendant had served two prior separate prison terms established that: on September 12, 1974, in Santa Barbara Superior Court, defendant pled guilty to having committed two counts of first degree robbery (on Aug. 23, 1974) and was sentenced, on October 2, 1974, to state prison for six months to life under former Penal Code section 1202b. Defendant's term for this offense began on October 3 when he was received by the Department of Corrections. The department soon learned that he was "wanted" in Ventura County, and defendant was brought to that county where, on March 11, 1975, he pled guilty to having committed one count of first degree robbery (on Aug. 20, 1974), and was sentenced to state prison pursuant to former Penal Code section 1202b, said commitment to be concurrent with his sentence from the County of Santa Barbara. He was paroled on May 3, 1978.

The trial court noted that the sentence to prison out of Santa Barbara "was imposed at a different time" than the sentence to prison out

---

[7]Defendant cannot complain of the fact that (1) Figueroa first identified defendant at the preliminary hearing, and (2) she was shown photographs of the lineup the day before trial to support his claim that the in-trial identification was impermissibly tainted. Figueroa was unable to identify defendant from the photographs shown her earlier and was out of town when the July 14 in-person lineup was held. Defendant could have demanded that a corporeal lineup be conducted for Figueroa prior to the preliminary hearing on July 27 (*Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625 [114 Cal.Rptr. 121, 522 P.2d 681]) but the record discloses no such request then. The prosecutor did not ask Figueroa to identify defendant at the preliminary hearing. Rather, defense counsel, on cross-examination, after eliciting from Figueroa the information that she did not attend an in-person lineup and the admission favorable to defendant that she was shown photographs on two occasions but was unable to make an identification, asked her if defendant was the individual who came into the store. Defense counsel's obviously calculated tactical decision to try to elicit a similar admission that she could not identify defendant in person backfired. Secondly, it was the defense, not the prosecution, who sought to have a later lineup conducted for Figueroa just before trial. While the court denied the motion for an all new in-person lineup, it ordered as a substitute that Figueroa be shown the relevant photographs of the corporeal lineup she had missed. Had defendant preferred no lineup at all at this point, he could have so informed the court and undoubtedly none would have been held.

of Ventura and ruled that defendant's prior sentences constituted two separate prior prison terms. Defendant contends, and we agree, that under a proper construction of the statute, defendant has served only one prior separate prison term within the meaning of Penal Code section 667.5.[8]

That section provides for the "[e]nhancement of prison terms for new offenses because of prior prison terms. . . ." Subdivision (b) states in pertinent part that "the court shall impose a one-year term for each prior *separate* prison term served for any felony; . . ." and subdivision (e) expressly declares that "[t]he additional penalties provided for prior prison terms shall not be imposed for any felony for which the defendant did not serve a prior *separate* term in state prison." (Italics added.)

Subdivision (g) defines a "prior separate prison term" as follows: "A prior separate prison term for the purposes of this section shall mean a *continuous* completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after escape from such incarceration." (Italics added.)

■ There is nothing in this definition to suggest that in order to constitute a "continuous completed period of prison incarceration" "concurrent or consecutive sentences for other crimes" must be imposed at the same time. (*Ibid.*) The term "continuous" obviously refers to the continuity of the imprisonment, which is unaffected by the temporal coincidence of the sentencing.

In support of the trial court's contrary interpretation of the statute, the People claim that the clause "which is not accompanied by a new commitment to prison" modifies the phrase "continuous completed period of prison incarceration" and, therefore, defendant served two separate prison terms because in 1975 he suffered a new commitment to prison on a new offense. ■ "It is a general rule of statutory construction, however, that '"modifying phrases are to be applied to the words immediately preceding them and are not to be construed as ex-

---

[8]Since we hold that defendant did not serve two prior separate prison terms, we need not reach his other contention that he did not waive a jury trial on the issue of the separateness of the terms.

tending to more remote phrases.""" (*People* v. *Corey* (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644].) Here, it is obvious from the context and punctuation of this statute that, in accord with the general rule, the clause concerning a new commitment applies only to the preceding phrase on revocation of parole.

■ In any event, if there is any ambiguity in Penal Code section 667.5, it is "the established policy 'to construe a penal statute as favorably to the defendant as its language and the circumstances of its application reasonably permit; . . . the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute.'" (*People* v. *Walker* (1976) 18 Cal.3d 232, 242 [133 Cal.Rptr. 520, 555 P.2d 306].)

Moreover, the contemporaneous administrative construction of this statute by the Community Release Board is consistent with the interpretation we have placed upon it. In a regulation promulgated pursuant to legislative authorization (see Pen. Code, § 5076.2), the board defines a single "'[p]rior prison term'" as "a prior felony conviction which resulted in a *continuous completed period of prison incarceration imposed* for the particular crime alone or *in combination with sentences for other crimes or commitments* (whether concurrent or consecutive) *received before release on parole.*" (Italics added.) (Cal. Admin. Code, tit. 15, § 2154, subd. (b)(2).) ■ It is a settled principle of statutory interpretation that such "[a]n administrative application of the language of an act is entitled to respect by the courts, and unless clearly erroneous is a significant factor to be considered in ascertaining the meaning of a statute." (*Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10]; accord *Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848]; *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743].)

Accordingly, one year of defendant's enhanced sentence for his priors must be stricken.

*Remand for Resentencing*
*Is Appropriate*

The trial court failed to comply with the requirement that it state its reasons for imposing consecutive sentences. (See Pen. Code, § 1170,

subd. (c); Cal. Rules of Court, rule 443; *People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66].)

■ We realize that in *People* v. *Blessing* (1979) 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780], the court held that it was unnecessary to remand the case solely for a recital of reasons where the record clearly showed that defendant's crimes met every one of the criteria listed in California Rules of Court, rule 425, and there was a total absence of any mitigating circumstances. The reasons for the court's imposition of consecutive sentencing were, therefore, patent and virtually precluded a contrary result.

In contrast, the record here reveals that only half of the criteria listed in the rule were met. The imposition of a consecutive sentence, though supportable on this evidence, is not a foregone conclusion.

■ In any event, a remand for resentencing is necessary because our holding that one year of the enhancement for priors must be stricken eliminates the necessity for the trial court's subsequent modification of the judgment staying eight months of the term pursuant to Penal Code section 1170.1, subdivision (f).[9] In resentencing defendant, the court, if it again imposes consecutive sentencing, should state its reasons on the record.

### Disposition

The judgment is reversed solely for resentencing in harmony with this opinion; in all other respects the judgment is affirmed.

Cobey, J., and Allport, J., concurred.

---

[9]That section provides in pertinent part: "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term pursuant to subdivision (b) of Section 1170...."