[Crim. No. 38214. Second Dist., Div. Three. May 28, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO GILBERT BRACAMONTE, Defendant and Appellant.

**COUNSEL**

Norman W. de Carteret, under appointment by the Court of Appeal, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Therene Powell, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Donald E. deNicola, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**POTTER, Acting P. J.**—Defendant Antonio Bracamonte appeals from the judgment of conviction of burglary (Pen. Code, § 459). The main issue on appeal is whether defendant was entitled to a bifurcated trial on the issue of (1) his guilt and (2) the validity of alleged prior convictions.

On March 27, 1979, at around 11 a.m., Keith Woodward saw the profile of a man 20 to 30 feet away, walking away from his neighbors' apartment, carrying a large, apparently heavy, covered object. He entered the apartment and noticed that the neighbors' portable TV set was missing. He then walked out to the sidewalk where he saw a red compact car stop at the curb and a male passenger step out. Woodward recognized him as the man he had seen leaving the apartment house area. After their eyes met, the passenger got back into the car. Woodward gave the police the license number of the car and described the suspect as a man in his thirties, from five feet ten inches to six feet tall, stocky with dark hair streaked with gray. A license check showed that the car was registered to defendant. Woodward selected defendant's photograph from a six-man black and white photographic display and identified the single photograph of defendant's car, depicting the license number.

Defendant's pretrial motion to suppress Woodward's in-court identification, as the product of an unfair photographic display, was denied.

In addition to the charge of the March 27, 1979 burglary, the information alleged that defendant had suffered five prior felony convictions within the meaning of Penal Code section 667.5, subdivision (b). The

alleged priors were: possession of a controlled substance (former Health & Saf. Code, § 11500) in 1955; burglary (Pen. Code, § 459; two counts) in 1960; attempted robbery (Pen. Code, §§ 664/211) in 1966; escape without force (Pen. Code, § 4530, subd. (b)) in 1968; and second degree burglary (Pen. Code, § 459) in 1976.

Defendant, who pled not guilty and denied the allegations of the prior convictions, moved to bifurcate the trial on the issues of guilt and the validity of the prior convictions on the ground that it would be "highly prejudicial to let the same jury determine the truthfulness of the priors . . . *at the same trial.*" (Italics added.) The court denied the motion for a separate trial on the priors.

Pursuant to this ruling, the entire information, including the allegations of the five prior convictions, was read to the jury at the commencement of the trial. The prosecutor then proceeded to present all the evidence relating both to defendant's guilt and to the priors before any verdicts were taken. Testimony and documentary evidence detailed the nature of each of the five alleged prior convictions and the amount of time defendant spent in custody as well as the interval between his release and the next offense.

Defendant admitted the car was his but testified that he was at home until about 3 p.m. and had lent the car to a man who somewhat resembled him. His wife corroborated his alibi testimony.

Defendant made a *Beagle*[1] motion to exclude the use of the prior convictions for impeachment and asked that the jury be instructed that they could not be considered as reflections on his credibility. The trial court, however, refused to so instruct the jury. The court did inform the jury orally that the documentary evidence regarding the alleged prior felony convictions had been placed in a sealed envelope which was to be opened only after arrival at a guilty verdict because the court did not want the jury "to be prejudiced or influenced by anything other than the facts [it had] in regard to the burglary." But the jury was specifically instructed, in CALJIC No. 17.18, that defendant's alleged prior convictions of "possession of a controlled substance, burglary [two counts], attempted robbery, escape without force, and burglary [second degree]" were relevant for evaluating defendant's credibility. The in-

---

[1]*People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].

struction stated in part: "You shall not consider such charges or evidence offered thereon in your determination of defendant's guilt of the crime for which he is now on trial.

"However, the fact that such defendant has been convicted of a felony, if such be a fact, may be considered for the purpose of determining the defendant's credibility as a witness concerning the crime charged."

In argument to the jury, the prosecutor referred to defendant as "a professional crook." The court denied the defense motion for a mistrial but agreed to admonish the jury to strike that part of the argument.

The jury found defendant guilty of second degree burglary and of having suffered four of the five alleged prior felony convictions.[2] This appeal followed.

## Contentions

Defendant contends that the court erroneously denied his motion (1) to bifurcate the proceedings, and (2) to suppress Woodward's in-court identification.[3]

## Discussion

### Summary

The judgment must be reversed. Under the circumstances of this case, defendant was entitled to a bifurcation of the trial which would have prevented the jury being advised of the alleged prior convictions unless it first found defendant guilty of the charged offense. The unitary procedure, though heretofore accepted in this state, needlessly exposed defendant to serious potential prejudice by revealing his prior criminality without advancing any legitimate state interest. Denial of the bifurcation motion herein also prejudiced defendant by permitting impeachment of his credibility by evidence that he allegedly suffered five previous felony convictions, which evidence was, for the most part,

---

[2]It found the allegation not true that defendant had suffered a prior felony conviction for escape without force and served a separate prison term within the meaning of Penal Code section 667.5, subdivision (b).

[3]Because we reverse, we do not reach defendant's other contentions.

inadmissible under *Beagle* standards, and gave the prosecutor the opportunity to brand defendant "a professional crook."

The court, however, properly denied the motion to suppress Woodward's in-court identification because the photographic procedure was fair.

*Defendant Was Entitled to a Bifurcated*
*Trial on the Issue of Guilt and*
*the Validity of the Prior Convictions*

The court should have granted defendant's motion to bifurcate the proceedings. "The admission of any evidence that involves crimes other than those for which a defendant is being tried has a 'highly inflammatory and prejudicial effect' on the trier of fact. [Fn. omitted.]" (*People* v. *Thompson* (1980) 27 Cal.3d 303, 314 [165 Cal.Rptr. 289, 611 P.2d 883].) The issue of guilt "and the proof of prior convictions are clearly severable." (*People* v. *Morton* (1953) 41 Cal.2d 536, 543 [261 P.2d 523].) The latter is unrelated to the substantive issue of guilt and affects only the penalty imposed. (*Ibid.*) Yet, prior to reaching a verdict on the burglary, the jury was permitted to hear detailed evidence of defendant having allegedly suffered five previous convictions, two of them for the identical offense of burglary. This unitary procedure was unnecessarily prejudicial and, under the circumstances of this case, deprived defendant of his due process rights to a fair trial secured by the California Constitution (art. I, § 15).

Limiting instructions, such as were given here, do not eliminate the risk of prejudice. "The naive assumption that prejudicial effects can be overcome by instructions to the jury, [citation] all practicing lawyers know to be unmitigated fiction." (*Krulewitch* v. *United States* (1949) 336 U.S. 440, 453 [93 L.Ed. 790, 799, 69 S.Ct. 130].[4] As the Supreme Court of Washington pointed out: "'It seems too plain for argument that to place before a jury the charge in an indictment, and to offer evidence on trial as a part of the state's case that the defendant has previously been convicted of one or more offenses is to run a great risk of creating a prejudice in the minds of the jury that no instruction of

---

[4]Moreover, the instruction here (CALJIC No. 17.18) permitting the use of this evidence for impeachment but not for substantive guilt appears to call for a "'[d]iscrimination so subtle [as to be] a feat beyond the compass of ordinary minds.'" (*People* v. *Antick* (1975) 15 Cal.3d 79, 98 [123 Cal.Rptr. 475, 539 P.2d 43].)

the court can wholly erase, and, while appellate courts will presume that the jury has followed the instructions of the court, yet we cannot blind our eyes to the active danger ever lurking in such action.'" (*State v. Kirkpatrick* (1935) 181 Wash. 313 [43 P.2d 44, 45].) Furthermore, empirical data supports the conclusion that a jury is likely to be influenced by a defendant's past record. (See Kalven & Zeisel, The American Jury (1966) pp. 127-130, 177-180.)

The Standards for Criminal Justice of the American Bar Association recommend that when, as here, "the defendant's prior convictions are admissible solely for the purpose of determining the sentence to be imposed, the jury should not be informed of them, either through allegations in the charge or by the introduction of evidence, until it has found the defendant guilty." (ABA Project on Minimum Standards for Criminal Justice, Stds. Relating to Trial by Jury (Approved Draft 1968) (hereinafter ABA Stds.) Std. 4.4, p. 102.) Moreover, the majority of states have adopted procedures requiring such a separation between the issues of guilt and of prior convictions. (See *Spencer v. Texas* (1967) 385 U.S. 554, 586, and cases and statutes cited in fn. 11 [17 L.Ed.2d 606, 627, 87 S.Ct. 648] (dis. opn. of Warren, C. J.); *State v. Olivera* (1976) 57 Hawaii 339 [555 P.2d 1199, 1203]; *Lawrence v. State* (1972) 259 Ind. 306 [286 N.E.2d 830, 834]; ABA Stds., *supra*, at p. 104.)

"The weight of modern authority calls for a mandatory two-stage trial for the trial of the collateral issue of enhanced punishment to avoid prejudice to the defendant in the initial determination of the issue of guilt." (*People v. Fullerton* (1974) 186 Colo. 97 [525 P.2d 1166, 1167.) The bifurcated procedure, or English-Connecticut[5] rule, whereby the same jury determines both issues separately is considered the fairest, most desirable procedure, because it combines efficiency, adequate notice to the defendant, and due regard for the right to a jury trial with lack of prejudice to the defendant. (See Note, *Recidivist Procedures: Prejudice and Due Process* (1968) 53 Cornell L.Rev. 337, 342; Note, *Recidivist Procedures* (1965) 40 N.Y.U.L.Rev. 332, 348.) Under this procedure, the prior convictions are alleged in the latter part of the information, which is not read to the jury unless it first finds the defendant guilty of the charged offense; then the jury is read the allegations of the priors, the evidence thereon is presented and the jury determines the validity of the prior convictions.

---

[5]"In England, the prejudice which results from proof of prior crimes before a finding of guilt has been recognized for more than a century, and the rule has been that a find-

We recognize that California Courts of Appeal have consistently upheld the validity of the unitary procedure. (See, e.g., *People v. Owens* (1980) 112 Cal.App.3d 441, 446 [169 Cal.Rptr. 359]; *People v. Guillen* (1974) 37 Cal.App.3d 976, 979 [113 Cal.Rptr. 43]; *People v. Cruz* (1970) 6 Cal.App.3d 384, 394 [85 Cal.Rptr. 918]; *People v. Mason* (1969) 269 Cal.App.2d 311, 313 [74 Cal.Rptr. 708]; *People v. Hickok* (1964) 230 Cal.App.2d 57, 60 [40 Cal.Rptr. 687]; *People v. Hoerler* (1962) 208 Cal.App.2d 402, 407-409 [25 Cal.Rptr. 209].) We conclude, however, that there is no justification for further adherence to this rule.

A bifurcated trial would carry out the intent of the Legislature to impose greater penalties upon recidivists who have failed to respond to prior convictions without subjecting those challenging their recidivist status to unnecessary prejudice. (See *Lawrence v. State, supra,* 286 N.E.2d at pp. 835-836.)

The only rationale offered to justify the present practice is the claim that it is part of a statutory "scheme" which "serve[s] the twin aims of judicial convenience and economy." (*People v. Owens, supra,* 112 Cal. App.3d at p. 447.) The statutory scheme, however, does not mandate such a procedure, nor is judicial convenience or economy promoted thereby.

Bifurcation would be equally consistent with the legislation. The detailed procedure for the charging, trying and finding of previous felony convictions established by the statutes (see Pen. Code, §§ 969, 1025, 1093, 1158) serves to provide a "safeguard of value" to the accused against improper increased punishment. (*People v. LoCicero* (1969) 71 Cal.2d 1186, 1192 [80 Cal.Rptr. 913, 459 P.2d 241].) Section 969 "affords an accused advance notice that his prior conviction is in issue" and section 1025 "gives him an opportunity to contest the fact and validity of the prior conviction to a jury." (71 Cal.2d at p. 1192.) While section 1025 does state that "the question whether or not he *has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty*" (italics added), it does not state nor imply that the jury should try both issues simultaneously. Though the language of section 1093, which sets forth the order of procedure of a

---

ing as to prior crimes is made in a separate hearing after the finding of guilt. [Fn. omitted.]" (*Spencer v. Texas, supra,* 385 U.S. at p. 586 [17 L.Ed.2d at p. 627] (dis. opn. of Warren, C. J.) Connecticut was the first state to adopt this procedure. (*State v. Ferrone* (1921) 96 Conn. 160 [113 A. 452, 457-458].)

trial, has been construed as permitting the reading of allegations of prior convictions in the information together with allegations of charged offenses (*People* v. *Hoerler, supra,* 208 Cal.App.2d at p. 408; *People* v. *Williams* (1957) 148 Cal.App.2d 525, 535), it does not mandate such a procedure and would not conflict with a two-part trial. In any event, a defendant can waive the formality of reading of the information, thereby avoiding the problem without any serious prejudice. (*People* v. *Hall* (1980) 28 Cal.3d 143, 155, fn. 4 [167 Cal.Rptr. 844]; *People* v. *Herrera* (1962) 209 Cal.App.2d 748, 752 [26 Cal.Rptr. 409].) Section 1158 certainly is consistent with a bifurcated procedure since it already provides that the jury must return a special separate verdict on the issue of the prior conviction.

A bifurcated procedure would be at least as economical of court time as the unitary practice. Such a procedure "does not offend any principle of orderly procedure nor tend to delay justice. In fact it might well expedite justice, for if a defendant is acquitted on the substantive charge, there is no occasion to take time to present evidence of prior convictions." (*State* v. *Stewart* (1946) 110 Utah 203 [171 P.2d 383, 387].)

Both the right to a jury trial of the validity of the prior convictions (art. I, § 16; *People* v. *Ford* (1964) 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892]) and the right to a fair trial (art. I, § 15) are guaranteed by the California Constitution. Under the unitary procedure, a defendant is forced to choose between the "equally unappealing alternatives" of admitting the prior convictions and losing his opportunity to contest their validity or denying them and being faced with the certainty that the state will attempt to prove them at trial, subjecting him to resulting prejudice. (See 40 N.Y.U.L.Rev., *supra* at p. 338.) As the American Bar Association Advisory Committee pointed out in criticizing this California procedure: "Given the alternative procedures which might be used, there is no reason to confront . . . defendants with the real possibility that they will be prejudiced by their failure to enter a stipulation." (ABA Stds., *supra,* at p. 105.) "[T]he courts should not participate in, or encourage, a procedure which obliges the accused to forfeit one constitutional right in order to retain the protection of another." (*Allegrezza* v. *Superior Court* (1975) 47 Cal.App.3d 948, 952 [121 Cal.Rptr. 245].)

Furthermore, though our Supreme Court has not specifically addressed this issue, we cannot reconcile the continuation of this unitary procedure with the protections our Supreme Court has otherwise ac-

corded defendants against potential prejudice resulting from informing the jury of a defendant's prior criminal activity. In *People v. Hall, supra*, 28 Cal.3d 143, our Supreme Court recently held that in a prosecution for possession of a firearm by an ex-felon, if the defendant is willing to stipulate to ex-felon status, the jury may not even be told that a prior felony conviction is an element of the offense. Underlying its decision was the express view that unless nondisclosure would "*legitimately* impair the prosecutor's case," the court was "compelled" to totally bar any mention of both "the nature and the fact of the prior conviction" in order "to avoid any prejudice which might result from informing the jury that [defendant] had been convicted of a felony." (*Id.*, at pp. 156-157.) (Italics in original.)

Our Supreme Court has found the potential for prejudice from evidence of a defendant's prior criminal activity so great that the trial court must exercise its discretion before determining whether or not to admit such evidence even when the evidence is specifically made admissible by statute. (See, e.g., *People v. Thompson, supra*, 27 Cal.3d 303, 317-318 [evidence of other crimes admissible under Evid. Code, § 1101, subd. (b)]; *People v. Beagle, supra*, 6 Cal.3d 441, 452-453 [evidence of prior felony conviction admissible for impeachment under Evid. Code, § 788].)

■ Accordingly, it is appropriate to now adopt a rule that whenever, in any future trial, a defendant pleads not guilty of priors and a jury trial thereof is not waived, he is entitled to a bifurcated proceeding wherein the jury is not informed of his prior convictions, either through allegations in the charge or by the introduction of evidence, until it has found the defendant guilty. As our Supreme Court said in *People v. Aranda* (1965) 63 Cal.2d 518, 530 [47 Cal.Rptr. 353, 407 P.2d 265], in a similar situation: "Whether or not it is constitutionally permissible, the practice is prejudicial and unfair to the . . . defendant and must be altered. '[I]n criminal actions, where life or liberty is at stake, courts should not adhere to precedents unjust to the accused. It is never too late to mend.' (*United States v. Delli Paoli* (2d Cir.) 229 F.2d 319, 323 [Frank, J., dissenting].) In the absence, however, of a holding by the United States Supreme Court that the due process clause requires such change,[6] the rules we now adopt are to be regarded, not as constitu-

---

[6]In *Spencer v. Texas, supra*, 385 U.S. 554, the United States Supreme Court in a five-to-four decision held that such a unitary procedure was not rendered unconstitutional because of the possibility of collateral prejudice to the defendant. Even the

tionally compelled, but as judicially declared rules of practice .... [Fn. omitted.]"

■ Though the rule which we announce[7] will only be prospective in its operation and thus unavailable to Bracamonte in this appeal, we conclude that the application of the unitary procedure in this particular case has resulted in such prejudice that it constituted an abuse of discretion and operated in fact to deny defendant due process of law. Not only was defendant portrayed in argument by the prosecutor as a professional crook, but, in a case where his credibility was crucial to his defense,[8] his credibility was impeached by evidence of prior convictions which otherwise would have been excluded under the *Beagle* motion.

Defendant's 1955 conviction for possession of a controlled substance would have been inadmissible because the heroin conviction is not relevant to a determination of credibility. (*People* v. *Spearman* (1979) 25 Cal.3d 107, 114-116 [157 Cal.Rptr. 883, 599 P.2d 74].) Similarly, the alleged conviction of escape without force would have been excluded because it does not have "as a necessary element of the offense the intent to lie, defraud, deceive, steal, etc." (*Id.*, at p. 114.) Even the alleged attempted robbery might have been excluded because it was only partly relevant to credibility (*People* v. *Fries* (1979) 24 Cal.3d 222, 229 [155 Cal.Rptr. 194, 594 P.2d 19]) and arguably was too remote to be probative (*People* v. *Antick, supra*, 15 Cal.3d at pp. 98-99).

---

majority stated, however, that it "might well agree" that the two-stage jury trial "is probably the fairest" "were the matter before us in a legislative or *rule-making* context." (*Id.*, at pp. 567-568 [17 L.Ed.2d at p. 616].) (Italics added.) Mr. Justice Stewart, concurring, observed that other recidivist procedures recently adopted were "far superior" to the unitary procedure. (*Id.*, at p. 569 [17 L.Ed.2d at p. 617].) Dissenters stressed that the unitary procedure violated due process by "needlessly prejudic[ing] the accused." (*Id.*, at p. 570 [17 L.Ed.2d at p. 618].)

[7]We have found no precedent expressly recognizing this intermediate appellate court's authority to adopt "judicially declared rules of practice," and we recognize that our Supreme Court may wish to confine its exercise to that court. If such be the case, simple depublication of this opinion will remedy the situation, and we trust that our ruling will be accepted as a respectful recommendation of appropriate action to be taken by our Supreme Court. We do not limit ourselves to such a recommendation because we appreciate the severity of the workload borne by that court and seek to lighten it by proposing a disposition which, if it is acceptable, may be allowed to stand and thereby effect a long overdue procedural reform.

[8]Defendant admitted the car seen near the scene of the burglary was his but claimed he was at home and lent it to another. Woodward had little time to observe the suspect, seen first only in profile from a distance of 20 feet and then stepping out of a car. There was no physical evidence linking defendant to the crime other than the use of his car.

Most importantly, both alleged prior burglary convictions would have been inadmissible for impeachment purposes because defendant was accused at this trial of committing the identical offense. (*People* v. *Fries, supra,* 24 Cal.3d at pp. 230-231; *People* v. *Spearman, supra,* 25 Cal.3d at p. 116.) The prejudicial effect of the admission in evidence of these prior burglaries cannot be discounted. As our Supreme Court has pointed out: "'A jury which is made aware of a similar prior conviction will *inevitably* feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged.'" (*People* v. *Fries, supra,* 24 Cal.3d at p. 230, italics in original.) Because the jury was instructed that it could consider all five prior felony convictions with respect to his credibility and may have been improperly influenced by its knowledge of these crimes and by the prosecutor's branding defendant a "professional crook," the judgment of conviction must be reversed.

### The Photographic Identification Procedure Was Fair

■ Substantial evidence supports the superior court's denial of the pretrial motion to suppress Woodward's in-court identification of defendant. (See *People* v. *Burke* (1980) 102 Cal.App.3d 932, 940 [163 Cal.Rptr. 4]; *People* v. *Sandoval* (1977) 70 Cal.App.3d 73, 84 [138 Cal.Rptr. 609].) The test of fairness is whether a photographic procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; *People* v. *Blair* (1979) 25 Cal.3d 640, 659 [159 Cal.Rptr. 818, 602 P.2d 738].)

Defendant contends that he was unfairly singled out in the pretrial black and white photographic display by his hair style. We disagree. Slight differences in hair color or style do not render a photographic display unduly suggestive. (*People* v. *Holt* (1972) 28 Cal.App.3d 343, 350 [104 Cal.Rptr. 572], disapproved on other grounds in *Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625, fn. 6 [114 Cal.Rptr. 121, 522 P.2d 681].) The photographic display here shows six dark-haired Latin males approximately the same age with mustaches. Each hair style is different and nothing about defendant's hair style draws one's attention. Moreover, Woodward did not describe the suspect's hair style to the police and he testified that he based his identification upon defendant's "facial" characteristics, not his hair style.

### Disposition

The judgment appealed from is reversed and the cause is remanded for further proceedings consistent with the views above expressed.

Cobey, J., and Fratianne, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 13, 1981. Richardson, J., was of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.