[Crim. No. 13773. Fourth Dist., Div. One. Apr. 1, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH CLARENCE HILL, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and Elizabeth A. Anderson for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BUTLER, J.**—A jury convicted Joseph Clarence Hill of kidnap for ransom or extortion (Pen. Code, § 209, subd. (a)),[1] burglary (§ 459), attempted robbery (§§ 664 and 211) and kidnap (§ 207), and found he used a firearm in committing each offense. Hill admitted two prior felony convictions within the meaning of section 667.5, subdivision (b).

---

[1]All statutory references are to the Penal Code unless otherwise specified.

Hill was sentenced to life with possibility of parole for kidnap for ransom with an additional two years for firearm enhancement and one year for each of the two prior felony convictions to run consecutively. The following terms were merged with the life sentence under section 654: the midterm of two years for burglary and two years for a firearm enhancement, the midterm of two years for attempted robbery and two years for a firearm enhancement and the midterm of four years for simple kidnap and two years for a firearm enhancement.

Hill's appeal challenges (1) the propriety of his admitting two prior felony convictions, (2) erroneous jury instructions, and (3) sufficiency of the evidence as to the asportation element of kidnap. He contends the offense of kidnap for ransom is unconstitutionally vague. Hill also asserts the prosecutor committed misconduct by referring to punishment in both argument and closing argument.

## Factual Background

On February 28, 1981, at approximately 3:30 a.m., Hill entered a Jack-in-the-Box restaurant located at Euclid Avenue in San Diego, with a gun in hand. Hill demanded all the safes be opened. Two employees told Hill the safes could not be opened because they did not have the keys. Hill picked up Perette Jackson who was attempting to hide behind the counter and said she was his ticket out of the store. Hill told the store manager Siverand he would take Jackson across the street and Siverand was to bring the money to him. Holding a gun against Jackson's side, Hill took her across Euclid Avenue approximately 25 yards to a tree where they waited. Hill told Jackson there had better be $500 in the bag or that he would kill her.

Siverand brought the money to Hill at which time Hill and Jackson walked across the parking lot to Pentecost and then walked southbound to Federal. They walked on Federal toward the John Adams Apartments.

Hill threatened to kill Jackson if he saw any policemen but after walking a little further past the apartments, Hill let Jackson go.

Hill was arrested two weeks later on March 16, 1981, after Threat, another employee of the Jack-in-the-Box, saw him in a department store. All the witnesses identified Hill at the trial. At trial, Hill testified on his own behalf that on the night of the offense he left his house at 10 p.m. after an argument with his girl friend Lillian Jones. He spent the evening drinking and returned at 12:30 a.m. He watched television until he fell asleep. Jones awakened him and they both went to bed for the remainder of the night. Jones' testimony corroborated Hill's alibi.

## THE PRIOR FELONY CONVICTIONS

Hill admitted two New Jersey priors, the first in 1971 for "illegal sale of narcotic drug," and the second in 1977 for robbery. His sentence was enhanced one year for each.

He asks the enhancements be vacated. First, he contends failure of the court to advise of a right to a bifurcated trial on the admissions voids the admissions for lack of a knowing and intelligent waiver of the right to bifurcation. He also contends his admission was coerced. Finally, the New Jersey priors concerned offenses which do not include all of the elements of like crimes under California law.

*People* v. *Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191] (decided five months before Hill's trial), adopts a rule entitling a defendant to a bifurcated proceeding when he denies prior convictions and does not waive a jury trial. There, the defendant moved to bifurcate his trial arguing it would be highly prejudicial to permit the same jury to determine the validity of the priors and the issue of his guilt. The appellate court agreed. "The unitary procedure, though heretofore accepted in this state, needlessly exposed defendant to serious potential prejudice by revealing his prior criminality without advancing any legitimate state interest. Denial of the bifurcation motion herein also prejudiced defendant by permitting impeachment of his credibility by evidence that he allegedly suffered five previous felony convictions, which evidence was, for the most part, inadmissible under *Beagle* standards, and gave the prosecutor the opportunity to brand defendant 'a professional crook.' " (*Id.*, at pp. 649-650.) *Bracamonte* declared the right to bifurcation as a judicially declared rule of practice. Hill asks the right to bifurcation be included within the admonishments compelled by *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561].

Mandatory admonishments are those that are said to be constitutionally compelled (*In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]), and those resulting from a judicially declared rule of evidence (*People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]), a judicially declared rule of practice (*People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]) or a judicially declared rule of criminal procedure (*In re Yurko, supra,* 10 Cal.3d 857). Whatever the source or semantic characterization, mandated admonitions protect the accused from relinquishing due process procedural rights concerning the issue of guilt and penal and custodial consequences of a plea.

We need not now determine whether the *Bracamonte* rule of entitlement to a bifurcated proceeding attains *Yurko* stature. ▓ On the record before us, we

conclude Hill's admission of the prior convictions must be set aside. The court's explanation of Hill's right to a jury trial on the issue of prior convictions had the effect of coercing the admissions. Hill was advised if he admitted the priors, the court would exclude them under *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. By so admitting the felony convictions, the court told Hill, "The jury is not going to know that you have had prior felony convictions." Alternatively, if Hill did not admit the priors, the court told Hill, "The jury is going to know and the district attorney is going to try to prove and will prove that you suffered these felony convictions."

If inadmissible under *Beagle,* in fairness the court should have told Hill the priors could be contested in a bifurcated trial should the jury find him guilty of one or more of the charged offenses. Hill was "forced to choose between the 'equally unappealing alternatives' of admitting the prior convictions and losing his opportunity to contest their validity or denying them and being faced with the certainty that the state will attempt to prove them at trial, subjecting him to resulting prejudice." (*Bracamonte, supra,* 119 Cal.App.3d at p. 653.)

As the admissions of the priors must be set aside, we do not consider Hill's further contentions as to the priors.

### JURY INSTRUCTIONS

Claiming reversible error, Hill attacks jury instructions improperly given, and which should have been given. We conclude the court's failure to instruct on its own as to each and every element of the charged offenses is prejudicial error.

The information charged four counts. Count 1 charged a violation of Penal Code section 209, subdivision (a), kidnap for ransom or extortion. After giving the requisite specific intent instruction, the court instructed the jury as to the elements of the offense, but failed to give the definition of ransom or extortion.

The court then told the jury Hill was charged with committing the crime of kidnap to commit robbery, a violation of section 209, subdivision (b). This was an offense that had not been charged. (CALJIC Nos. 9.23 and 9.25.) The court instructed: "This is the definition of kidnapping to commit robbery. The defendant is charged in Count One of the Information with the commission of the crime of kidnapping to commit robbery, a violation of Section 209 of the Penal Code. [¶] Any person who, with the specific intent to commit robbery, kidnaps any individual, is guilty of the crime of kidnapping to commit robbery."

The court added: "Where a person is charged with the crime of kidnapping for the purpose of robbery, it is not necessary to establish that such purpose was

accomplished, for a crime of that nature is complete if and when the kidnapping is done for such a purpose."

Hill was charged in count 4 with simple kidnap. The appropriate instruction for simple kidnap is CALJIC No. 9.19. Instead, the court gave the following instruction (CALJIC No. 9.20, which covers kidnaping with an underlying offense): "Every person who, in connection with the commission or attempted commission of the crime of robbery, unlawfully and with physical force moves any other person against his will and without his consent, or unlawfully compels any other person, against his will and without his consent and because of a reasonable apprehension of harm, to move for a substantial distance, that is, a distance more than slight or trivial, is guilty of the crime of kidnapping. [¶] In order to prove the commission of the crime of kidnapping, each of the following elements must be proved: [¶] 1. That a person was unlawfully moved by the use of physical force or was compelled to move because of a reasonable apprehension of harm, [¶] 2. That the movement of such person was in connection with the commission or attempted commission of the crime of robbery, [¶] 3. That the movement of such person was against his will and without his consent, and [¶] 4. That the movement of such person was for a substantial distance, that is, a distance more than slight or trivial." A CALJIC No. 9.20 instruction is only appropriate where the charge involves the use of an underlying crime other than one specified in section 209. As set out above, robbery is an offense specified in section 209, subdivision (b).

Simple kidnap is a general intent crime. The court failed to instruct on concurrence of act and general criminal intent (CALJIC No. 3.30).

Hill was charged in count 3 with attempted robbery. No instruction on specific intent was given. Although the court defined attempt, the court stated: "The defendant is charged in Count Three of the Information *with the commission of the crime of robbery,* a violation of Section 211 of the Penal Code." (Italics added.)

1. *The court failed to instruct on simple kidnap.*

◼ Although Hill was charged in count 4 with simple kidnap, the jury was not instructed on this offense. Instead, the jury was instructed on simple kidnap with an underlying offense, the underlying offense being robbery. It was error for the court to instruct on simple kidnap with an underlying offense of robbery. Kidnap with a robbery is an aggravated kidnap (§ 209, subd. (b)).

The court further compounded the error as to simple kidnap by failing to instruct as to the general intent element of that offense. The court did instruct the jury as to the specific intent element of an aggravated kidnap. Ordinarily, the

instruction as to specific intent would cure the error. (*People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913].) However, as we shall discuss, the aggravated kidnap instruction is replete with its own errors, and thus not sufficiently curative.

2. *The failure to define extortion in the aggravated kidnap charge is prejudicial.*

It is well settled the trial court has no *sua sponte* duty to give amplifying instructions in the absence of a request if the terms used in the instructions given are "commonly understood by those familiar with the English language"; while it does have such a duty where the term has a "technical meaning peculiar to the law." (*People* v. *Anderson* (1966) 64 Cal.2d 633, 640 [51 Cal.Rptr. 238, 414 P.2d 366].)

Ransom has no statutory definition. It appears in Penal Code section 209 and in Harbors and Navigation Code section 817. (The master of a vessel in case of its capture may pay a ransom in money or part of its cargo.) The word is commonly understood by those familiar with the English language. ("I will ransom them from the power of the grave; I will redeem them from death; I will be thy plagues; oh grave, I will be thy destruction." (Holy Bible, King James version, Hosea 13:14.) ■ However, extortion is an offense defined in Penal Code section 518 and is the subject of extensive CALJIC instructions (Nos. 14.70-14.79). While the word may be understood in a general sense, extortion as used in section 209 has a technical meaning peculiar to the law. The court should have instructed on the legal definition of extortion. (*People* v. *McElheny* (1982) 137 Cal.App.3d 396, 404 [187 Cal.Rptr. 39].)

Although Hill was charged with violating section 209, subdivision (a), kidnap for ransom or extortion, the court instructed as to the uncharged offense of kidnap for robbery; an aggravated kidnap offense found in section 209, subdivision (b). This could only confuse and mislead the jury into the belief kidnap for robbery was the equivalent of the charged offense, kidnap for ransom or extortion. We are unable to say upon which charge the verdict was based.

3. *It was error to fail to instruct on specific intent for attempted robbery.*

The court's jury instruction on required concurrence of act and specific intent was limited solely to counts 1 and 2, i.e., kidnap for purposes of ransom or extortion and burglary. The court did not instruct on the specific intent crime of attempted robbery.

We find no curative instruction on the record. ■ An attempt to commit a crime is a specific intent crime and such intent cannot rest upon a presumption. (*People* v. *Miller* (1935) 2 Cal.2d 527 [42 P.2d 308].)

Defense counsel did not object to any of the instructions proffered nor did he submit any of his own. In fact, in examining the superior court file, we find both plaintiff and defendant requested the instructions now complained of. Indeed, outside the presence of the jury, the prosecutor asked, "And there are no LIO or a lesser included offense counsel wants?" And defense counsel responded, "No. If the court feels that it should be put in sua sponte, I would appreciate knowing it, but I don't believe there is at this time." To which the court replied, "No, I believe the defendant has taken the position he isn't involved in any of the alleged crimes. It is either all or nothing." And defense counsel answered, "That is correct."

Even though there was a failure of defense counsel to request other instructions, we recognize Hill's right to raise these points on appeal. (*People* v. *Wilson* (1967) 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820].)

■ While the issue and strategy at trial was Hill's alibi, it remains incumbent upon the prosecution to prove all elements of the charges beyond a reasonable doubt. It is well settled the court must instruct on the "general principles of law governing the case." (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 715.) This duty arises from the need to "promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of ineptness of counsel under the adversary system, . . ." (*People* v. *Wade* (1959) 53 Cal.2d 322, 324 [348 P.2d 116].)

We conclude the court has a *sua sponte* duty to instruct as to each and every element of the charged offenses, and failure so to do is prejudicial.

The People assert the overwhelming factual evidence of Hill's guilt excuses lack of proper instructions as to the applicable law and therefore only "nonreversible error" was committed. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].) "This reasoning leads, if followed to its logical conclusion, to the abandonment of all instructions." (*People* v. *Haney* (1977) 75 Cal.App.3d 308, 312 [142 Cal.Rptr. 186].)

■ The jury here was ignorant of the nature of the intent required for simple kidnap and the nature of the acts required to convict of aggravated kidnap. Instructing as to an uncharged offense while failing to give appropriate instructions as to charged offenses is not due process.

In view of these conclusions, we do not consider Hill's other contentions that Penal Code section 209, subdivision (a) is unconstitutionally vague as to the meaning of "relatives and friends," and his arguments whether substantial evidence supports the asportation element of simple kidnap.

Hill's conviction on counts 1, 3 and 4 must be reversed.

## Prosecutorial Misconduct

■ Finally, Hill contends the prosecutor's argument and closing argument to the jury in which he alluded to punishment constituted prejudicial misconduct. No objections were made to the remarks which could have been cured by an admonition from the court. A review of the entire record does not suggest a miscarriage of justice as to the prosecutor's remarks. The judgment is affirmed as to count 2, and reversed as to counts 1, 3 and 4.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied April 19, 1983.