[No. F002865. Fifth Dist. Dec. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
TITO MARTINEZ, Defendant and Appellant.

COUNSEL

Judith R. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert W. Marshall, W. Scott Thrope and David F. De Alba, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—Defendant, Tito Martinez, and a codefendant, John Vela, were charged with robbery (Pen. Code, § 211).[1] It was further alleged defendant had suffered a prior felony conviction for robbery within the meaning of sections 667 and 1192.7. During trial and outside the presence of the jury, defendant admitted the alleged prior robbery conviction. After trial, the jury found defendant guilty as charged. The trial court denied probation and sentenced defendant to state prison for the aggregate term of eight years. Defendant filed a timely notice of appeal.

### STATEMENT OF FACTS

On March 28, 1983, at approximately 9:40 p.m., Theresa Flores and her cousin, Gina Dwyer, stopped at a Taco Bell restaurant on Niles Street at Mount Vernon in Bakersfield. Theresa and Gina were returning from a softball game and Theresa was still wearing her uniform. Theresa drove her 1978 Camaro into the Taco Bell lot and parked next to a Ford Thunderbird. The latter vehicle had backed into its parking space and had its headlights on. As Theresa pulled into the vacant parking space she noticed several people standing near the front of the Thunderbird.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

After she parked her car, Theresa alighted and was suddenly approached by a man later identified as codefendant John Vela. Vela held a knife in his right hand, pointed it at Theresa's waist, and grabbed her purse with his left hand. Theresa screamed and released the purse. Vela then ran with the purse around the front of the Thunderbird, opened the passenger door and yelled, "Go, go." The Thunderbird sped away after Vela entered the car.

Meanwhile, Theresa ran toward the Thunderbird and read the license numbers off the rear license plate as the car passed by her. Theresa and her cousin immediately ran into the restaurant and asked the clerk to write down the license number and call the police.

At approximately 9:40 p.m., Kern County Sheriff's Deputy Robert Posey was dispatched to the Taco Bell. When Posey arrived a minute later, Theresa and her cousin gave him the license number and description of the car. Theresa and her cousin further advised Deputy Posey two young Mexican males were responsible. Posey immediately broadcast the information. Approximately three minutes after the broadcast Senior Deputy Sheriff Kenneth Eddy detained the same Ford Thunderbird at a Circle K market, approximately three and a half miles away from the Taco Bell. Officers transported Theresa and her cousin to the detention site. Both girls identified Vela as the culprit. Defendant was driving the vehicle when it was detained. Neither Theresa nor her cousin could identify him as the driver of the vehicle at the Taco Bell lot.

Officers found a paring knife on the floorboard of the Thunderbird and a folding knife in the locked glove compartment. However, they were unable to locate or recover the purse.

### Defense

Defendant testified on his own behalf. On the evening of March 28, 1983, he was visiting his cousin, Julio Morales, in east Bakersfield. He left a few minutes past 9:30 p.m. to begin a long walk home. After defendant walked across Jefferson Park, a Ford Thunderbird pulled to the side of the road. John Vela, the brother of defendant's girlfriend, was driving the vehicle. Vela offered defendant a ride and defendant accepted. Vela then asked defendant to drive the car because Vela had been drinking. When defendant and Vela reached the Circle K market near Union and Columbus Avenues, defendant noticed a sheriff's car following them. Defendant assumed the deputy had seen Vela drinking a beer while the Thunderbird was in motion. The deputy stopped the Thunderbird just before it reached the market.

Defendant denied any knowledge of or participation in the robbery of Theresa Flores.

On cross-examination, the prosecutor asked defendant if he had been convicted of a felony. Defendant testified he had previously been convicted of armed robbery. However, he also stated the incident was an unfortunate part of his history he truly regretted.

## DISCUSSION

### I. DID THE TRIAL COURT PREJUDICIALLY ERR BY DENYING DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF HIS PRIOR ROBBERY CONVICTION FOR IMPEACHMENT PURPOSES?

After the People rested their case-in-chief, the following exchange occurred:

"THE COURT: Let the record show we're in chambers with the defendant present outside the presence of any jurors. And your motions?

"Ms. VOLLMER [defense counsel]: . . . . [¶] Secondly, I would like to put my client, Mr. Martinez, on the stand. I am concerned that if the jury hears about this robbery, this prior robbery, that the prejudice is going to outweigh the probative value. So I would make a Beagle motion to exclude that, and in saying that, I would also state we would be willing to stipulate outside the presence of the jury to the prior as a part of the bifurcated proceeding. In other words, we would stipulate so the Court would determine that in fact this—Mr.—

"THE COURT: You would admit the prior is what you're saying?

"Ms. VOLLMER: He would admit the prior, but this would be kept from the jury, essentially. That's what I'm proposing.

"THE COURT: Well—

"Ms. VOLLMER: And my authority for that would be People versus Beagle. I think it's still good law, despite Prop. 8.

"MR. BRADSHAW [deputy district attorney]: Basically, I would rely on Prop. 8, your Honor, and 20F, which expressly states that priors, prior felony convictions may be used in any criminal proceeding without limitation for impeachment purposes. While the Supreme Court has not talked about retro—they have not really decided retroactivity and this sort of thing, we're not concerned with retroactivity in this case because it is subsequent to Prop. 8.

"THE COURT: All right. Your motion, Beagle motion is denied. The People may use the prior conviction of a felony, which apparently is violation of Section 211 of the Penal Code committed on or about or at least the conviction is on or about September 13, 1978, in Superior Court for the County of Kern. And the People may use that prior felony for impeachment purposes, providing they're prepared to prove it in the event of a denial."

In *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], the Supreme Court addressed the impact of Proposition 8[2] on impeachment with felony priors. The court stated: "We shall hold that—always subject to the trial court's discretion under section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d), as well as due process, forbids the use of convictions of felonies which do not necessarily involve moral turpitude." (*Id.*, at p. 306.) Applying these rules, the court found the trial court erroneously permitted defendant, charged with receiving stolen property, to be impeached with a prior for simple heroin possession. The court held the latter offense does not necessarily involve moral turpitude. Further, the Supreme Court held the trial court erroneously permitted defendant to be impeached with a prior for heroin possession for sale. While this offense necessarily involves moral turpitude, i.e., not dishonesty but the intent to corrupt others, the trial court erroneously concluded it had no discretion as to either prior. Finally, the court held under California Constitution, article VI, section 13 and *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], certiorari denied 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70], the errors were nonprejudicial.

The Supreme Court concluded the error in *Castro* was not prejudicial because the People's case was strong, defense witnesses provided exculpatory testimony, defendant herself volunteered she had been incarcerated at the California Rehabilitation Center and a women's prison before any attempt was made to impeach her with the priors, and the court instructed the jury to consider the priors only to determine the credibility of the witness. Upon a review of the entire record, the Supreme Court held it not reasonably probable a result more favorable to the defendant would have occurred absent the error.

In the instant case, the threshold question is satisfied. There can be no doubt robbery does involve moral turpitude, i.e., a readiness to do evil. All

---

[2]Proposition 8, the "Victims' Bill of Rights" provides in pertinent part: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (f).)

priors which necessarily involve dishonesty under the pre-*Castro* standards ipso facto involve moral turpitude under *Castro. (People* v. *Parrish* (1985) 170 Cal.App.3d 336, 349 [217 Cal.Rptr. 700], review den. Nov. 14, 1985.)

However, the trial court erred by failing to exercise its Evidence Code section 352 discretion on the record in ruling upon the admissibility of the prior. We then must review the entire record to determine whether or not it was reasonably probable a result more favorable to defendant would have occurred in the event he had testified without impeachment by his prior felony conviction. *(People* v. *Castro, supra,* 38 Cal.3d at p. 319.)

As noted above, Theresa Flores and her cousin, Gina Dwyer, stopped at the Taco Bell restaurant on Niles Street and Mount Vernon Avenue in Bakersfield on March 28, 1983, at approximately 9:40 p.m. Theresa drove her vehicle into the Taco Bell parking lot and parked next to a Ford Thunderbird. As Theresa entered the vacant parking space she noticed several people standing near the front of the Thunderbird. Theresa got out of her car, walked toward the restaurant, and was robbed of her purse at knife point. Theresa's assailant ran with the purse to the front of the Thunderbird, entered the passenger side, and yelled "Go, go." Theresa read the license number off the rear plate of the Thunderbird and immediately had restaurant personnel call the sheriff's department. Senior Deputy Sheriff Kenneth L. Eddy testified as to the sequence of events based on the sheriff's office radio log of transmissions. According to the log, Deputy Sheriff Cosper received a phone call about the incident at 9:39:43 p.m. The sheriff's office communications center dispatched a field unit at 9:40:45 p.m. Deputy Sheriff Robert Posey arrived at the crime scene at 9:41:45 p.m. Deputy Posey broadcasted information on the suspect vehicle at 9:43 p.m. Senior Deputy Eddy monitored the broadcast, traveled five to seven blocks, and then spotted the suspect vehicle. The sheriff's office dispatcher broadcast the information to all law enforcement agencies at 9:44:23 p.m. Senior Deputy Eddy advised the dispatcher he had located the suspect vehicle at 9:45:11 p.m. Eddy detained the suspect vehicle at Circle K market at 9:48:03 p.m. At trial, Eddy testified the shortest route between the Taco Bell and the Circle K market was 3.4 miles. Gina Dwyer saw the driver of the Thunderbird at the Taco Bell parking lot and noticed he was a young Mexican male with black hair. Thus, the uncontradicted evidence reflects that Vela robbed the victim at knife point at the drive-in, fled in the Thunderbird driven by a second person who matched defendant's description, and the car, Vela and defendant were in Deputy Eddy's view, all within a period of less than six minutes.

Defendant testified on his own behalf. He presented his defense without limitation and denied any knowledge of or participation in the robbery. Vela

refused to testify on defendant's behalf. The prosecutor raised defendant's prior conviction on cross-examination. Defendant testified he had been convicted of armed robbery in Kern County Superior Court and served a term in state prison for that offense. Immediately after defendant's testimony, the court instructed the jury they could consider the prior conviction only to determine defendant's credibility as a witness. On redirect examination, defendant testified the prior conviction was part of his past history and something he regretted.

In view of the victim's testimony and the circumstantial evidence against defendant, only six minutes elapsed from the time the robbery was committed until Deputy Eddy had defendant and Vela's vehicle in view, approximately three miles from the crime scene, we conclude the error was harmless. It is not reasonably probable a result more favorable to defendant would have occurred absent the error.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### V. DID THE TRIAL COURT ABUSE ITS DISCRETION BY FAILING TO DISMISS THE PRIOR CONVICTION PURSUANT TO SECTION 1385?

 Defendant contends the trial court abused its discretion by failing to dismiss his prior conviction pursuant to section 1385.

Section 1385 states: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

 Despite the adoption of Proposition 8, trial courts retain power under section 1385 to strike or otherwise render unenforceable the enhancements provided for in section 667. (*People* v. *Fritz* (1985) 40 Cal.3d 227, 229 [219 Cal.Rptr. 460, 707 P.2d 833]; *People* v. *Lopez* (1983) 147 Cal.App.3d 162, 165 [195 Cal.Rptr. 27]; *People* v. *Price* (1984) 151 Cal.App.3d 803, 818-820 [199 Cal.Rptr. 99].) Therefore, defendant contends "this matter must be remanded to the trial court to permit it to exercise its dis-

---

*See footnote on page 881, *ante.*

cretion, if it so chooses in the interest of justice, to dismiss the prior conviction . . . ." However, the record does not show the trial court rejected the *Lopez/Price* interpretation of section 1385. Defendant's trial counsel never moved to dismiss the prior conviction pursuant to that section and the trial court never affirmatively addressed the matter on the record. Evidence Code section 664 provides: "It is presumed that official duty has been regularly performed." Scores of appellate decisions, relying on this provision, have held "in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law." (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913 [141 Cal.Rptr. 133, 569 P.2d 727], quoting *Serrano v. Workman's Comp. Appeals Bd.* (1971) 16 Cal.App.3d 787, 790-791 [94 Cal.Rptr. 511].) This rule has been applied in both civil and criminal proceedings. (*Ibid.*)

In the absence of contrary evidence in the record, this court is entitled to presume the trial court properly considered section 1385 in imposing sentence.

### VI. DID DEFENDANT'S FIVE-YEAR ENHANCEMENT PURSUANT TO PROPOSITION 8 VIOLATE THE CONSTITUTIONAL PROHIBITION AGAINST EX POST FACTO LAWS?*

. . . . . . . . . . . . . . . . . . . . . .

### VII. DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING DEFENDANT'S MOTION FOR BIFURCATION?

██ Defendant next contends the trial court denied him due process of law by denying his motion to bifurcate the matter of his prior felony conviction.

Prior to the defense case the following exchange occurred:

"THE COURT: All right. Your motion, Beagle motion is denied. The People may use the prior conviction of a felony, which apparently is violation of Section 211 of the Penal Code committed on or about or at least the conviction is on or about September 13, 1978, in Superior Court for the County of Kern. And the People may use that prior felony for impeachment purposes, providing they're prepared to prove it in the event of a denial.

"MR. BRADSHAW [deputy district attorney]: I am prepared, your Honor.

---

*See footnote, *ante,* page 881.

"THE COURT: With that denial of your motion, what do you intend to do about the prior conviction that's alleged for enhancement purposes here on the first count? Do you wish to have that, still have that bifurcated and have it tried later on?

"MS. VOLLMER [defense counsel]: Well, I would like to confer—I would like a brief recess. I wish to call my investigator. There is a possibility of another witness. It's kind of probable, probably not, but a possibility. So I want to check with him on that.

"And secondly, I would like to discuss this further with my client because in view of the Court's ruling, we have to make a serious decision here as to whether he will testify.

"THE COURT: You're going to make a decision as to whether or not he'll testify. If he does testify, I'm going to deny your motion to bifurcate. You understand that? That's what I told you.

"MS. VOLLMER: I see, well, of course, if the jury hears it for one purpose, they're going to hear it for other purposes, anyway.

"THE COURT: That's the reason I deny your motion to bifurcate. If he does not testify, I'll grant your motion to bifurcate. I'm not telling you that for the purpose of influencing whether or not he testifies."

The defendant thereafter admitted the prior felony conviction on the record out of the presence of the jury.

In *People v. Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191], the Second District Court of Appeal declared a judicial rule of practice regarding proof of prior convictions. The court held: ". . . whenever . . . a defendant pleads not guilty of priors and a jury trial thereof is not waived, he is entitled to a bifurcated proceeding wherein the jury is not informed of his prior convictions, either through allegations in the charge or by the introduction of evidence, until it has found the defendant guilty." (*Id.*, at p. 654.)

In *People v. Tipton* (1984) 160 Cal.App.3d 853 [206 Cal.Rptr. 821], hearing denied January 3, 1985, the Second District determined *Bracamonte* survived the enactment of Proposition 8. The court found no conflict between *Bracamonte* and article I, section 28, subdivision (f) of the California Constitution which provides: "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any crim-

inal proceeding." The court concluded the bifurcated trial required by *Bracamonte* imposed no limitation on the *use* of prior felony convictions and therefore was not prohibited by section 28, subdivision (f). Finally, the court concluded the failure to grant defendant Tipton's request for a bifurcated trial was prejudicial error requiring a remand for a jury trial on the issue of the prior conviction and for resentencing if necessary.

Thus, we are presented with the following scenario. The trial court improperly ruled the defendant could be impeached with his robbery prior. The court then declared, in view of its (improper) ruling the robbery prior would be admitted for impeachment purposes, defendant's motion for a bifurcated trial on the robbery enhancement would be denied if the defendant elected to testify. Under *Bracamonte* and *Tipton*, this too was error. Compounded error. Defendant was thus presented with an insoluble situation. He wished to testify on his own behalf. As in *Bracamonte*, defendant was forced to choose between the " 'equally unappealing alternatives' of admitting the prior conviction . . . and losing his opportunity to contest [its] validity or denying [it] and being faced with the certainty the People [would] attempt to prove [it] at trial, subjecting him to resulting prejudice." (*People* v. *Bracamonte, supra,* 119 Cal.App.3d at p. 653; *People* v. *Hill* (1983) 141 Cal.App.3d 661, 665-666 [190 Cal.Rptr. 628].) And there is little doubt prejudice would have occurred since without the *Castro* error defendant would have testified without impeachment by his prior felony conviction (see part I, *ante*). If, as is evident from the record, defendant's admission of the prior resulted from the impeachment ruling, then that ruling effectively coerced his admission. The end result is the jury never found defendant sustained a serious felony conviction and evidence of his serious felony conviction was never admitted as proof of the enhancement. The question then is whether we may view the error harmless.

To find the error harmless we must assume that once the jury hears about a prior felony conviction for one limited purpose, the defendant suffers no prejudice if it then hears about it for a totally different purpose. If this were true, then one might ask why the court would ever give limited purpose instructions. In fact, while the defendant would be better off if the jury heard nothing about the prior, he will suffer less if the jury hears about the prior for one limited purpose, instead of multiple purposes. Admission of the prior as evidence of an enhancement which punishes recidivists will emphasize the defendant's prior record and suggest a general criminal predisposition. This will make it difficult for the jury to limit its use of the prior for impeachment purposes as it relates to the new offense. We thus conclude the trial court's error in denying defendant's motion for bifurcation was not harmless and the finding defendant suffered a prior serious felony conviction must be reversed.

## VIII. Did the Enhancement Pursuant to Section 667 Require Trial by Jury?

■ Defendant also contends sentence enhancement pursuant to section 667 only applies to situations where the prior conviction has been tried by a jury.

Section 667 provides in relevant part: "Any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges *brought and tried* separately." (Italics added.)

Defendant contends (1) section 667 applies only to situations where the prior conviction has been tried by a jury; (2) he received a five-year enhancement based on a prior conviction obtained pursuant to a guilty plea; and (3) this enhancement was erroneous because the prior conviction was not obtained pursuant to jury trial.

The constitutionality of section 667 is no longer in doubt. (*People* v. *Jackson* (1985) 37 Cal.3d 826 [210 Cal.Rptr. 623, 694 P.2d 736]; *People* v. *Jacobs* (1984) 157 Cal.App.3d 797 [204 Cal.Rptr. 234]; *People* v. *O'Bryan* (1985) 37 Cal.3d 841 [210 Cal.Rptr. 450, 694 P.2d 135].) As stated in *Jacobs,* the constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders or recidivists is no longer open to serious challenge. (*People* v. *Jacobs, supra,* 157 Cal.App.3d at p. 802.)

In *People* v. *Ebner* (1966) 64 Cal.2d 297 [49 Cal.Rptr. 690, 411 P.2d 578], our Supreme Court rejected a similar contention as that raised by defendant in the instant case. In *Ebner,* defendant admitted prior felony convictions for forgery, burglary and robbery. The trial court found him to be a habitual criminal under then section 664, subdivision (a) and his sentence was enhanced in accordance with that section. On appeal, defendant contended the prosecution failed to prove essential elements to an adjudication that he was a habitual criminal under section 664: namely, that the prior felony convictions of burglary and robbery were separately brought and tried and that defendant served separate prison terms for the crimes. The language of section 664 was virtually the same as the present section 667 in this regard.

Justice Tobriner rejected defendant's argument, stating: "Defendant's admission of the prior convictions is not limited in scope to the fact of the convictions but extends to all allegations concerning the felonies contained in the information. (*People* v. *Jackson* (1950) 36 Cal.2d 281, 287 . . .;

*People* v. *Greenwell* (1962) 203 Cal.App.2d 1, 3-4 . . . .) In effect defendant admitted to two felony convictions at different times and in different states; the trial court therefore correctly concluded that defendant had twice been convicted 'upon charges separately brought and tried.'

"Defendant argues that he was not in fact 'tried' on the prior California robbery conviction because he pleaded guilty to the charge and did not undergo a trial on the merits. The term 'tried,' as used in the context of the statutory phrase, 'charges separately brought and tried,' signifies that the two prior felony proceedings must be totally separate, not only during proceedings before trial but also as to those leading to the ultimate adjudication of guilt. (Cf. 2 Witkin, Cal. Crimes (1963) § 1008, p. 956.) Past decisions draw no distinction between an adjudication of guilt based on a plea of guilt and that predicated on a trial on the merits. (See *People* v. *Greenwell, supra,* 203 Cal.App.2d 1, 4-5; *People* v. *Stanphill* (1958) 166 Cal.App.2d 467, 470 . . . .)" (*People* v. *Ebner, supra,* 64 Cal.2d at pp. 303-304.) In view of the similarity of language and purpose between section 667 and former section 664, we reach a similar result. Defendant's contention is rejected.

## IX. Did the Trial Court Erroneously Sentence Defendant to the Middle Term?

■ Assuming arguendo a remand for bifurcation is not required, defendant contends the trial court erroneously denied him probation.

Section 1202.7 states: "The Legislature finds and declares that the provision of probation services is an essential element in the administration of criminal justice. The safety of the public, the nature of the offense, the interests of justice, the loss to the victim, and the needs of the defendant shall be primary considerations in the granting of probation."

Probation is the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer. (§ 1203, subd. (a).) The conditions under which probation may be granted are statutorily defined. "If the court determines that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be served by granting probation to the person, it may place the person on probation." (§ 1203, subd. (b).) ■ In construing these provisions, our state Supreme Court has held: "The trial judge has broad discretion in determining whether the statutory conditions are satisfied. (*People* v. *Wilson* (1973) 34 Cal.App.3d 524, 527 . . . .) This discretion, however, is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal

principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. (*People* v. *Russel* (1968) 69 Cal.2d 187, 194 . . .; *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424.) Discretion is abused when granting probation 'exceeds the bounds of reason, all of the circumstances being considered.' (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 . . .; *People* v. *Russel, supra.*)" (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237].)

■ An order denying probation will not be reversed in the absence of a clear abuse of discretion. (*People* v. *Podesto* (1976) 62 Cal.App.3d 708, 723 [133 Cal.Rptr. 409].) In reviewing the matter on appeal, a trial court is presumed to have acted to achieve legitimate sentencing objectives in the absence of a clear showing the sentencing decision was irrational or arbitrary. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65]; *People* v. *Axtell* (1981) 118 Cal.App.3d 246, 259 [173 Cal.Rptr. 360].)

A denial of a grant of probation generally rests within the broad discretion of the trial court and should not be disturbed on appeal except on a showing the court exercised discretion in an arbitrary or capricious manner. (*People* v. *Edwards* (1976) 18 Cal.3d 796, 807 [135 Cal.Rptr. 411, 557 P.2d 995].)

■ In the instant case, defendant submits the sentencing procedure was defective because the court did not state sufficient reasons for denying him probation. A denial of probation is not a "sentence choice" and a court is not required to state reasons for denial of probation when it properly states reasons for imposition of a term of imprisonment. (*People* v. *Butler* (1980) 107 Cal.App.3d 251, 253-255 [165 Cal.Rptr. 709].)

■ In the instant case the trial court properly imposed sentence in the following manner:

"THE COURT: The Court having read and considered the probation officer's report and considering the comment of counsel, I feel that probation is not justified in this case. Probation is denied.

"And in considering the circumstances in aggravation and the circumstances in mitigation, we note that in mitigation the defendant appears to have played a minor role in the crime involved in this case in that he drove the car. He did not take part in the actual purse snatch or confrontation of the victim.

"Circumstances in aggravation are that this defendant's prior convictions and adjudications of commissions of crimes as a juvenile are numerous, and as an adult, also.

"Two, the defendant has served a prior prison term.

"Three, the defendant was on parole and summary probation when he committed the present offense.

"And four, the defendant's prior performance on probation and parole have been unsatisfactory.

"I think I'm justified in imposing the upper term, but considering the entire circumstances of the offense, too, that these offenses could be extremely aggravated, this one wasn't, fortunately. I'm going to sentence the defendant to the State Department of Corrections for the mid term of three years, probation having been denied. And that three-year sentence is enhanced pursuant to Section 667 of the Penal Code for a period of five years for a total of eight years sentence to the State Department of Corrections."

In the instant case, the sentencing court read the probation officer's report and recommendations, heard the arguments of counsel, weighed the alleged mitigating and aggravating circumstances, and imposed the middle term. Since one aggravating factor is sufficient to aggravate a defendant's term (*People* v. *Covino* (1980) 100 Cal.App.3d 660, 670 [161 Cal.Rptr. 155]), then, a fortiori, several of these factors should also be sufficient to justify imposition of the middle term.

The trial court did not err in denying defendant probation and imposing the middle term.

The jury verdict of guilty of the underlying charge, robbery, is affirmed. The finding that defendant suffered a prior serious felony conviction is reversed. The matter is remanded for retrial as to the truth of the alleged enhancement and for resentencing. Should defendant elect to admit the alleged enhancement, resentencing would not be required.

Franson, Acting P. J., concurred.

**WOOLPERT, J.**—I join in my colleagues' judgment. I agree the particular circumstances causing defendant to admit the prior conviction were prejudicial and entitle him to a trial on that issue, however unlikely any defense may be. Nevertheless, I would not be so quick to readily accept the *Bracamonte* and *Tipton* theory that denial of bifurcation is reversible error.

As stated in *People* v. *Tipton* (1984) 160 Cal.App.3d 853, 855 [206 Cal.Rptr. 821], "[i]n *Bracamonte* the court declared, as a rule of criminal practice, that whenever '. . . a defendant pleads not guilty of priors and a

jury trial thereof is not waived, he is entitled to a bifurcated proceeding wherein the jury is not informed of his prior convictions, either through allegations in the charge or by the introduction of evidence, until it has found the defendant guilty.' ''

*Bracamonte* and *Tipton* both require bifurcation on the theory that the jurors should not hear disposition-type evidence which is irrelevant to guilt. In each case the court concluded evidence of the prior convictions was inadmissible under *Beagle* standards. The *Bracamonte* court did limit its general conclusion that a unitary trial causes prejudice, qualifying the conclusion with the language "in this particular case. . . ." (*People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 655 [174 Cal.Rptr. 191].) Earlier it announced its rule in broad terms suggesting bifurcation should be afforded in all such cases. (*Id.*, at p. 654.) Not all courts have found the *Bracamonte* rule to be justified. (*People* v. *Trujillo* (1984) 154 Cal.App.3d 1077, 1090-1091 [202 Cal.Rptr. 832].) If the conviction resulted in imprisonment, the fact of imprisonment is beyond challenge except for identity, a challenge seldom made, and legal questions concerning the validity of the conviction are reserved for decision by the court, not the jury. (*Ibid.*)

Although I too have some doubts about the need for bifurcation, I have serious reservations about expanding the "rule" to almost per se consequence when violated. If the purpose of the rule is to sanitize the defendant during the guilt trial, it does so, but should not always do so. If in light of *Castro* there is a *Castro-Beagle* qualifying prior conviction to be used for impeachment purposes, it may be used even though its use may coincidentally prove the prior conviction for enhancement purposes. Neither *Bracamonte* nor *Tipton* hold that permissible impeachment is made impermissible by the bifurcation rule. To the contrary, in the usual case in which defendant testifies, the prior conviction is admitted.

Courts are scrupulous in their efforts to protect defendants from prejudicial disposition-type evidence, but make exceptions which involve mysterious qualifications. Each exception bears a red flag of uncertainty and promotes appeal. Influenced by these prohibitions and exceptions, curious results follow. A defendant whose crime spree has been halted by arrest, may face multiple count charges, or piecemeal prosecution, depending upon time of discovery of the crimes and joinder rules.

The hesitant prosecutor who fails to charge all known crimes in one complaint, may reach trial with a desire to bring in evidence of the other crimes only to fail because of the limitations required by *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883]. However, to the

extent multiple counts may be charged and are tried, jurors hear evidence of other crimes simply because each crime must be proven.

On the other hand, the fortuitous circumstance of when the crimes are discovered may require separate trials. Thus, a jury may hear weak evidence on each of several counts in one action, yet will not hear conclusive proof of a similar crime which resulted in an earlier conviction by another jury if the prior conviction fails to qualify for impeachment under *Castro*.

These strange results may be the necessary consequence of rules based upon the belief that jurors are unable to fairly consider information about prior criminal activity and are likely to find guilt if there is evidence of disposition. If so, due process requires care in this respect. The ultimate logical extension of the antidisposition evidence approach would be to require the severance of all counts in order that the jury truly divorce disposition as a consideration in determining guilt.

I agree with the conclusion the unique pre-*Castro* circumstances made inapplicable the logic of defense counsel and the trial court. Ms. Vollmer observed: "I see, well, of course, if the jury hears it for one purpose, they're going to hear it for other purposes, anyway." The court agreed. However, it was not that simple. Understandably neither counsel nor the court anticipated the appellate rule we follow which assumes the trial court would *not* have admitted evidence of the prior conviction, even if it were *Castro*-qualifying when properly weighed against potential prejudice. Therefore, following the logic of the other members of this court I agree the enhancement has not been fairly established.

I caution, however, that Ms. Vollmer's observation may in some cases be a proper one. If a defendant testifies and denies the prior conviction, the prosecutor must then prove the prior conviction, absent an admission which often follows the question. Impeachment is permitted and cannot be denied merely because an enhancement is alleged.

In a bifurcated trial, if a defendant denies a prior conviction and the jury hears the prosecution's necessary proof of that fact, the jury need not make a written finding before it may consider the prior conviction for impeachment purposes. By contrast, in a unitary trial the jury would have to make a finding that the enhancement allegation is true. Despite appellant's argument, the requirement of a written finding would not unduly prejudice defendant in a unitary trial.

Having superficially agreed with the Vollmer observation, I agree with the majority in many situations it would not be all that simple. If a defend-

ant's denial of a prior conviction causes the jurors to hear nothing more than would be the case if no enhancement were charged, then bifurcation would be an unnecessary procedure. This assumes, of course, the trial court reserved its ruling on bifurcation until the defendant testified and was impeached, and did not initially read to the jury the portion of the information charging the enhancement. If, however, the information charges a prior prison term, or its proof requires anything more than jurors would ordinarily hear in routine impeachment, evidence irrelevant to impeachment would reach the jurors, perhaps exposing the jurors to prejudicial disposition evidence.

Because it will be difficult to sanitize the proceeding to the point the defendant testifies and is impeached, and because a unitary trial may result in conflicting cautionary instructions, it seems unlikely a cautious court will want to work very hard to avoid a bifurcated trial. If the defendant testifies and admits the prior conviction for impeachment purposes, it is likely the deferred issue will then disappear with a belated admission for enhancement purposes.

Therefore, agreeing with the result in this case, I reserve judgment whether the failure to bifurcate is always of serious consequence.

The petitions of both parties for review by the Supreme Court were denied April 17, 1986.