Filed 1/21/22  P. v. Murphy CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>PATRICK GILLES MURPHY,<br><br>      Defendant and Appellant. | A163017<br><br><br><br>(Sonoma County Super. Ct. No. SCR-743203-1) |

Patrick Gilles Murphy appeals after pleading guilty to stalking (Pen. Code, § 646.9, subd. (b); count one)[1], dissuading a witness (§ 136.1, subd. (c)(1); count two), and willfully inflicting injury on a domestic partner (§ 273.5, subd. (a); count three.)  His appointed appellate counsel has filed a brief raising no issues but seeking our review pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Our independent review of the record reveals no arguable issues, and we affirm.

### BACKGROUND

### A.

The facts underlying Murphy's offenses relate to a dating relationship he had with Jane Doe (a pseudonym) from May through December 2020.  At a preliminary hearing on February 19, 2021, Jane Doe testified to multiple incidents between September and December 2020 in which Murphy made

---

[1] Undesignated statutory references are to the Penal Code.

harassing, angry, and threatening statements to her in repeated phone calls and text messages. Because she became fearful of Murphy, Doe obtained a temporary restraining order against him that was in effect from September 15 through October 8. However, he continued to contact her throughout that period, notwithstanding the restraining order. For example, on September 25, he contacted Doe approximately 100 times in a two hour period; he was angry and irrational.

On October 10, while Doe was meeting with the police about Murphy's actions, he called her 99 times and sent her about 70 text messages in less than two hours. Murphy threatened to come to her house and knock out the teeth of the father of Doe's children. He also threatened to call Child Protective Services and have her children taken away from her.

Although the couple reconciled briefly, on December 14, Doe told Murphy she wanted to break up with him, and he "lost his mind." He came to her house, and, while Doe was sitting outside in her car, he smashed the passenger side mirror and smashed large rocks onto her car. After forcing his way into the car, Murphy grabbed and bent her hand and twisted her arm, causing Doe such pain that it "buckled" her. Afterward, Doe's wrist was bruised and swollen. Doe went directly to the police station and obtained an emergency protective order.

Murphy continued to contact Doe. For example, on December 15, he threatened to break down her door and break her windows, and he followed through by damaging her door frame. On December 19, Murphy texted photos of what appeared to be a handgun to Doe's teenaged son, indicating that Murphy was going to kill the next person with whom Doe was involved. Doe's son was terrified, although Doe later learned it was a pellet gun.

On December 21, Doe informed the police that Murphy was repeatedly calling her and sending her messages. As Murphy continued to text her, Doe forwarded the messages to the police,

2

and they began looking for him.  Once Murphy realized the police were looking for him, he accused Doe of setting him up and told her she would regret it.  He told her that he retaliates for fun, that he was on his way to her house, and that she should think before she sets people up because she has kids.

On December 23, while the protective order was in place, Murphy continued to send her angry text messages and said Doe had set him up to be caught by law enforcement.  He also drove to the parking lot by Doe's home, and he texted her to let her know he was " 'here.' "  In addition, he left her screaming and threatening messages that made Doe fear for her safety.  After Murphy was taken into custody, he continued to call her from jail.

**B.**

Murphy entered a guilty plea to the three counts on April 7, 2021, and the prosecution dismissed 13 other charges.  Defense counsel stipulated that the preliminary hearing provided a factual basis for the three counts.  The parties agreed to a maximum sentence of six years, leaving the specific sentence to the discretion of the trial court.

At the sentencing hearing, Murphy apologized for his conduct and requested probation, citing his efforts while in custody to address his anger management and mental health issues.  The court denied his request for probation, reasoning in part that although he had expressed a willingness to obtain treatment and comply with the terms of probation, he had "an extensive history of not following through."  The court also noted that based on Murphy's prior felony convictions, the court would have to find that this was an unusual case to warrant probation, and the court could not make such a finding here.

In determining Murphy's sentence, the court stated that the only mitigating factor was that he took responsibility for his actions prior to going to trial.  The court noted several aggravating factors, including the involvement of the appearance

3

of weapons, the involvement of Doe's children, the attempted break-in at Doe's home, threats of violence, and Murphy's prior criminal history. The court also expressed concern that Murphy continued to be fixated on Doe.

Based on these factors, the court selected the middle term of three years each for count one (§ 646.9, subd. (b)), count two (§ 136.1, subd. (c)(1)), and count three (§ 273.5, subd. (a)). The court imposed the sentence for count two consecutively to the sentence on count one. The court agreed with the presentence report's recommendation of consecutive sentences because the crimes involved separate acts and threats of violence, and were committed at different times and separate places. The court selected a concurrent sentence for the third count, resulting in a total aggregate sentence of six years.

The court imposed a $300 restitution fine under Penal Code section 1202.4, subdivision (b), stayed a second fine in the same amount under Penal Code section 1202.45, and reserved the issue of victim restitution. The court imposed court security fees of $40 per conviction under Penal Code section 1465.8, and criminal conviction fees of $30 per conviction under Government Code section 70373. The court also issued a criminal protective order for 10 years, prohibiting any contact with Jane Doe or her children, coming within 100 yards of them, or owning, using, or possessing any firearms or ammunition.

## C.

Murphy filed a notice of appeal and requested a certificate of probable cause (§ 1237.5), which the trial court denied. We subsequently granted Murphy's request to deem his notice of appeal operative as to noncertificate issues.

While this appeal was pending, Murphy sent a letter to this court asserting that portions of the reporter's transcripts dated February 19, 2021, and April 7, 2021 were omitted from the appellate record. He stated that he had asked his counsel to obtain the omitted portions of the transcripts, and he asked the

4

court to appoint him new counsel and order that the omitted portions be added to the appellate record. We have reviewed the record and the transcripts in question appear to be complete. We note that the court augmented the appellate record with the February 19, 2021, preliminary hearing transcript after Murphy's counsel filed a motion to augment the record. We therefore deny as unnecessary Murphy's letter request to augment the record. We address Murphy's request for appointment of new counsel below.

## DISCUSSION

Murphy's appellate counsel advised him of his right to file a supplemental brief to bring to this court's attention any issue he believes deserves review. Murphy subsequently filed a supplemental brief. We have independently reviewed the record as well as Murphy's supplemental brief, and we have found no arguable issues.

In his supplemental brief, Murphy alleges that he never entered into the plea agreement because there were two inapplicable boxes on the agreement form that he did not initial. However, two pages later Murphy acknowledges "I Pled Guilty." Consistent with this acknowledgement, the record confirms that he personally entered into the plea agreement after being advised of and waiving his rights.

Murphy's supplemental brief raises several other arguments that are not cognizable on appeal without a certificate of probable cause because they go to the validity of his plea: malicious prosecution and prosecutorial misconduct in relying on false or irrelevant evidence or tampering with the evidence underlying the charges; a challenge to the victim's credibility and the victim's preliminary hearing testimony; ineffective assistance of trial counsel in failing to investigate all available defenses and failing to diligently prepare or investigate the People's motion to consolidate; and sufficiency of the evidence to support the charges. (See *People v. Stamps* (2020) 9 Cal.5th 685, 694 [" ' The

5

defendant may take an appeal without a statement of certificate grounds or a certificate of probable cause if he does so solely on noncertificate grounds, which go to postplea matters not challenging his plea's validity and/or matters involving a search or seizure whose lawfulness was contested pursuant to section 1538.5.' "]; see also, e.g., *People v. Stubbs* (1998) 61 Cal.App.4th 243, 244-245 [claim that counsel was ineffective prior to entry of guilty plea required certificate of probable cause]; *People v. Pinon* (1979) 96 Cal.App.3d 904, 907-909 [defendant could not assert that his plea lacked a factual basis where he failed to obtain a certificate of probable cause].)

With respect to post-plea issues, the trial court acted within its discretion in denying probation, particularly given Murphy's two prior felony convictions and history of probation and parole violations detailed in the presentence report. (See *People v. Martinez* (1985) 175 Cal.App.3d 881, 897 (*Martinez*) [affirming denial of probation where defendant's prior performance on probation and parole were unsatisfactory], abrogated on another ground in *People v. Calderon* (1994) 9 Cal.4th 69, 72; see also Pen. Code § 1203, subd. (e)(4); Cal. Rules of Court, rule 4.414.) The court likewise acted within its discretion in sentencing Murphy to six years in prison – the lid the parties agreed upon – and ordering consecutive middle-term sentences of three years each for counts one (Pen. Code, § 646.9, subd. (b)) and two (Pen. Code, § 136.1, subd. (c)(1)). (See Cal. Rules of Court, rules 4.420, 4.425; Pen. Code, § 1170.15; *People v. Calvert* (1993) 18 Cal.App.4th 1820, 1838-1839 [no abuse of discretion in ordering consecutive sentences where "the crimes were predominantly independent and were committed at different times and places"]; see also *Martinez*, *supra*, 175 Cal.App.3d at p. 897.) The fines and fees imposed by the court were authorized (Pen. Code, § 1202.4, subd. (b); Pen. Code, § 1465.8; Gov. Code, § 70373), and Murphy asserted no challenges to them. (See *People v. Greeley* (2021) 70 Cal.App.5th 609, 624.) In addition, the criminal

6

protective order was authorized by Penal Code section 136.2, subdivision (i).

We have identified no issues that require briefing. Further, we see no indication that Murphy's appellate counsel has failed to comply with her responsibilities. (See *Wende, supra*, 25 Cal.3d at p. 442.) We therefore deny Murphy's request for appointment of new counsel.[2]

## DISPOSITION

The judgment is affirmed.

---

[2] To the extent Murphy's supplemental brief intended to request a stay, the request is denied as moot.

_____

BURNS, J.

We concur:

_____

JACKSON, P.J.

_____

SIMONS, J.

A163017

8