Filed 11/19/24  P. v. Clark CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON ROBERT CLARK,<br><br>    Defendant and Appellant. | D082606<br><br><br>(Super. Ct. No. SCS324511) |


APPEAL from a judgment of the Superior Court of San Diego County, Enrique E. Camarena, Judge.  Affirmed.

Laura R. Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jason Robert Clark of one count each of robbery (Pen. Code § 211)[1] and attempted robbery (§§ 644, 211). The jury also found true allegations that Clark used two deadly and dangerous weapons—an airsoft gun and a hammer—in the commission of both offenses (§ 12022, subd. (b)(1)) and caused great bodily injury to one of the victims (§ 12022.7, subd. (a)). Clark submitted records showing he was a veteran who suffered from post-traumatic stress disorder (PTSD) and asked the court to exercise its discretion to grant him probation under section 1170.9. Clark asserts the trial court abused its discretion in denying the request, because its comments on the record suggest it improperly relied on its finding that there was an insufficient connection between his PTSD and the crimes. He also asserts the trial court erred by ordering him to pay a restitution fine under section 1202.4, a court operations assessment under section 1465.8, and a criminal conviction assessment under Government Code section 70373, despite being aware that he was homeless and unemployed. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Underlying Crimes

Vanessa D. was working as a cashier at a Food 4 Less store on December 11, 2022. She was 20 years old at the time. Clark came into the store around noon, approached Vanessa from behind and said, "hey." Thinking he had a question, Vanessa turned towards Clark. He was wearing a black hoodie and cap and had a duffle bag around his midsection. He said, "Put the money in the bag." Vanessa could not see Clark's hands at first but at some point, she noticed that he had a small black handgun and a hammer.

---

[1] Further unspecified statutory references are to the Penal Code.

He repeated the demand, this time saying, "Put the money in the fucking bag," in a louder and "scarier" tone.

Vanessa turned back to the register and began picking the bills up to give to Clark. She felt the gun against her lower back. She turned back around with the bills in her hands and asked Clark, "What are you doing?" Clark told her to put the money in the bag a third time. Nervous and unsure what to do, Vanessa turned back around toward the register with the money still in her hands. Clark grabbed her from behind with his arm around her neck, placing her in a chokehold.

Vanessa called out to a coworker, Celia P., for help. Celia was working as a supervisor and was helping a customer at the cigarette case in the front of the store. Celia heard Vanessa yelling as she returned to her register. She looked towards Vanessa's register and saw Clark holding Vanessa in a chokehold with a gun to her head. Clark lifted Vanessa up off her feet by her neck and then threw her to the ground. Vanessa felt her knee hit the ground and felt pain and stiffness. Clark bent towards her while she lay on the floor and took the money from her hand.

After throwing Vanessa down, Clark encountered Celia in front of the checkout area. He had the gun and hammer in one hand and the money he took from Vanessa in the other, and was attempting to put the money into the duffle bag around his midsection. Hoping to de-escalate the situation, Celia said, "Calm down. Calm down. Everything's going to be okay." Clark responded by stating, "Give me all your money." Celia tried to open her register but was unable to because she had been in the middle of a transaction and her override card was not working.

Unable to get the money from the second register, Clark walked away and left the store. He was arrested soon after near a trolley station about 100

yards away. He had a black duffle bag with a number of bills in different denominations, a hammer, and a black airsoft handgun in his possession at the time of the arrest.

Vanessa continued to have knee pain for months after the robbery and ultimately needed surgery to repair a ruptured anterior cruciate ligament.

The robbery was captured on store security cameras and the prosecution played the video for the jury.

## II. Verdict and Sentencing

The jury found Clark guilty of one count of robbery, and found true allegations that Clark personally used two deadly and dangerous weapons— the airsoft handgun and the hammer—and that he inflicted great bodily injury on Vanessa during the commission of the offense. The jury also found Clark guilty of one count of attempted robbery, and found true allegations that he personally used the same two deadly and dangerous weapons in the commission of that offense.

The jury further considered certain alleged aggravating factors in a bifurcated proceeding. As to the robbery in count 1, they found the offense involved great violence or other acts disclosing a high degree of cruelty, viciousness or callousness within the meaning of California Rules of Court, rule 4.421(a)(1);[2] the offense was carried out with planning, sophistication, or professionalism within the meaning of rule 4.421(a)(8); and the offense involved the attempted or actual taking and damage of great monetary value, within the meaning of rule 4.421(a)(9). As to the attempted robbery in count 2, the jury made similar findings regarding the aggravating factors in rules 4.421(a)(1) and 4.421(a)(8).

---

[2] All further "rule" references are to the California Rules of Court.

4

Clark did not testify at trial, but he did submit to an interview with the probation officer before sentencing.  He said that he was using marijuana on the date of the offenses.  He continued to insist that he was not involved, despite the surveillance footage and witness identifications, and stated, " 'the three people lied.' "  He expressed no remorse for the victims.  According to the probation report, Clark had been homeless since July of 2022.  The probation officer noted, in different portions of the report, that Clark was unable to pay rent because he had been terminated from his employment, and that Clark had stopped going to work because he had become homeless and had nowhere to clean up.

The probation officer also noted in the report that Clark served in the military from 2005 to 2010, had deployed twice to Iraq, and was subsequently diagnosed with PTSD.  He was proscribed Prozac but did not take it and instead chose to self-medicate with marijuana.  The probation department recommended a total combined sentence of 11 years, 4 months in prison.

The People's sentencing brief noted that Clark had a prior conviction for corporal injury to a spouse in July 2013, and that he had received and successfully completed probation for that offense.  They argued the robbery showed a pattern of violence and increasingly dangerous conduct, and asked the court to deny probation for the current offenses and to sentence Clark to a total term of 8 years, 8 months in prison.

In response, Clark asserted that he suffered verbal and physical abuse as a child and had witnessed numerous fatalities while serving in Iraq.  He submitted records showing that he sought services through Veteran's Affairs (the VA) in 2013 and had been diagnosed with PTSD.  He reported coping with his PTSD by using alcohol and that he had previously undergone counseling to assist with both PTSD and alcohol abuse.  He acknowledged

5

that he was presumptively ineligible for probation, but asked the trial court to consider his PTSD and to grant him probation and order him into treatment under section 1170.9. In the alternative, he asked the court to sentence him to the low terms run concurrently on both counts, pursuant to section 1170, subdivision (b)(6).

After hearing argument from both sides, the trial court explained that it had considered Clark's minimal criminal record, his history of abuse, and his PTSD, as well as the findings on the factors in aggravation. The trial court determined Clark was presumptively ineligible for probation and that this was not an unusual case in which the interest of justice would best be served by granting probation. The court sentenced Clark to five years in prison, comprised of the low term of two years on count 1, plus a three-year enhancement under section 12022.7, subd. (a), and a concurrent term of two years on count 2.

Clark filed a timely notice of appeal.

## DISCUSSION

Clark asserts the trial court erred for two reasons. First, he argues that the trial court abused its discretion because it was unaware of the scope of its statutory obligation to consider his PTSD under section 1170.9. Second, he contends that the trial court erred by imposing certain fines and fees despite knowing that he was homeless and unemployed.

## I. The Trial Court Did Not Abuse Its Discretion By Denying Probation

The grant or denial of probation is within the broad discretion of the trial court. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831; *People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1091 (*Ferguson*).) The trial court is presumed to have acted to achieve legitimate sentencing objectives, and its decision will be reversed only if it exercised its discretion in an

6

arbitrary or capricious manner. (*Ferguson,* at p. 1091; *People v. Martinez* (1985) 175 Cal.App.3d 881, 896.) However, "[w]hen a court is unaware of its discretion, the remedy is to remand for resentencing unless the record clearly indicates that the trial court would have reached the same conclusion if it had been aware of its discretion." (*People v. Barber* (2020) 55 Cal.App.5th 787, 814.) Thus, remand is necessary when the record is ambiguous as to whether a trial court was aware of its mandatory obligations under section 1170.9. (*People v. Panozo* (2021) 59 Cal.App.5th 825, 836 (*Panozo*).)

The Legislature enacted section 1170.9 "to ensure that judges are aware that a criminal defendant is a combat veteran with [PTSD] . . . and to be aware of any [appropriate] treatment programs that exist . . . at the time of sentencing if a sentence of probation is appropriate." (Stats. 2006, ch. 788, § 1(g).) The Legislature has amended section 1170.9 several times and since January 1, 2015, the statute has required that trial courts consider a defendant's PTSD as a factor in favor of granting probation. (§ 1170.9, subd. (b)(1), amended by Stats. 2014, ch. 163.)

Section 1170.9, subdivision (a) provides, in relevant part: "In the case of any person convicted of a criminal offense who could otherwise be sentenced to county jail or state prison and who alleges that the person committed the offense *as a result* of . . . [PTSD], substance abuse, or mental health problems stemming from service in the United States military, the court shall, prior to sentencing, make a determination as to whether the defendant was, or currently is, a member of the United States military and whether the defendant may be suffering from . . . [PTSD], substance abuse, or mental health problems as a result of the person's service." (Italics added.)

Section 1170.9, subdivision (b)(1) provides further: "If the court concludes that a defendant convicted of a criminal offense is a person

7

described in subdivision (a), and if the defendant is otherwise eligible for probation, the court shall consider the circumstances described in subdivision (a) as a factor in favor of granting probation." However, pursuant to section 1203, subdivision (e)(3): "Except in unusual cases in which the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . [a]ny person who willfully inflicted great bodily injury or torture in the perpetration of the crime of which that person has been convicted."

Here, the trial court properly concluded that Clark was presumptively ineligible for probation under section 1203, subdivision (e)(3). Clark does not dispute that finding. Thus, considering the impact of Clark's service and associated PTSD diagnosis, the trial court still had to find that this case qualified as an unusual case in which the interests of justice would be best served by sentencing Clark to probation. And it had to make that determination while also considering the jury's findings that Clark acted callously and willfully inflicted great bodily injury in the perpetration of the crime. The record before us demonstrates that the trial did consider Clark's PTSD, but was unable to conclude that it, or the other mitigating factors, were sufficient to overcome the presumption against probation. The court explained:

> "I have considered that Mr. Clark has been diagnosed with a mental illness related to his combat military service. But Mr. Clark is presumptively ineligible for a grant of probation . . . pursuant to Section 1203(e)(3) because he caused great bodily injury. I have reviewed Rule 4.413. The Court does not find that this is an unusual case in which the interest of justice would best be served by granting probation. In that regard, the Court finds that Mr. Clark's actions did appear focused, determined, and planned well beforehand. He was calm and collected. There were no angry outbursts or something that provoked him to have an

8

emotional reaction.  I mean, those are the hallmarks of PTSD in the sense that there's something that provokes, whether it's seen or unseen, and then there's an outburst.  This didn't seem like an outburst.  This didn't seem like a reaction to anything.

"The video shows him clearly outside contemplating whether to go in.  He's prepared with his hood up and prepared with the tools that he used to effectuate the robbery.

"So I'm denying his request for probation and finding an [*sic*] unusual circumstance. . . .  Again, I have considered Rules . . . 4.421 and 4.423.  Specifically, I have considered the childhood abuse that Mr. Clark described and the victimization that he suffered.  I've also considered—I think it's clear—but rejected a connection with the offense's conduct with mental illness.  It's not enough just to say that he has mental illness.  There—I think there needs to be some kind of connection, even if minimal.  I don't see that here, given that the offense was entirely on video or that there was even—I mean, there was recent contact with the VA.  From the VA records, it shows that he was contacting them for homelessness, not for symptoms of PTSD.  I realize that Mr. Clark may have been effectuating this robbery because he was homeless and had issues with money, but that's not necessarily in connection with PTSD itself."

Clark contends the trial court's comments on the record shows that it "did not correctly consider whether the crime was committed 'as a result of' appellant's service-related PTSD, as required under section 1170.9."  He asserts the trial court's statement regarding the lack of connection between the crimes and his PTSD suggest "the court incorrectly believed the crime had to be committed while [he] was experiencing symptoms of PTSD in order

9

for the circumstance to favor a grant of probation."[3]  We do not find the court's analysis to be so narrow.

As with any judgment, we presume the trial court understood and followed the law and indulge all intendments and presumptions to support its decision.  (*Ferguson, supra,* 194 Cal.App.4th at p. 1091; *Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554.)  Doing so here, we cannot say that the trial court acted arbitrarily or capriciously, or that the record is ambiguous as to whether the trial court was aware of its mandatory obligations under section 1170.9.  (*See Panozo, supra,* 59 Cal.App.5th 825, 836.)  Unlike *Panozo* and the other cases Clark relies upon, here, the trial court expressly stated that it considered, but rejected, the impact of Clark's PTSD in deciding whether to grant probation, as required by section 1170.9.  (Cf. *Panozo,* at pp. 837–841 [trial court did not mention military service or PTSD in its oral pronouncement of sentence].)

Considering the totality of the trial court's comments in context, it is apparent that the trial court understood it had to consider both Clark's PTSD and his childhood trauma as mitigating factors in deciding whether to grant him probation.  However, that is not the only factor the court needed to consider.  As the court explained, it also considered the aggravating factors, including the jury's finding that Clark inflicted great bodily injury on one of the victims, which made him presumptively ineligible for probation.  Doing so, the court made an affirmative finding that this was not an unusual case in which the interest of justice would best be served by granting probation, notwithstanding Clark's PTSD diagnosis.  It is in that context that the court

---

[3]     The People contend Clark forfeited these arguments by failing to raise them in the trial court.  We decline to decide the matter based on forfeiture and exercise our discretion to reach the merits.

discussed the attenuated connection between the crimes and the PTSD diagnosis. The court noted that Clark appeared focused and determined, suggesting that he planned the attack (rather than acting erratically in a heightened emotional state), and his actions callously caused significant injury to one of the victims. Thus, the court concluded, although the robbery may have been tied to his homelessness, the underlying PTSD diagnosis was not a significant factor in the crime and did not overcome the presumption against probation.

Clark asserts *Panozo* is instructive, despite the trial court's express acknowledgment of his PTSD, because the court's comments suggest it believed section 1170.91 was only applicable if Clark was actively experiencing symptoms of PTSD during the commission of the crime. Not so. Rather, as we have explained, indulging all presumptions in favor of the judgment, we view the trial court's comments as simply explaining why it did not believe the PTSD diagnosis was sufficient to overcome the presumption against probation. In other words, considering the totality of circumstances of the underlying crimes, the court concluded the aggravating factors— including that the attack was callous and calculated and that Clark caused gross bodily injury to one of the victims—outweighed the impact of Clark's underlying PTSD diagnosis. We cannot conclude that doing so was an abuse of the trial court's discretion.

In reaching the foregoing conclusion, we do not intend to suggest that we disagree with Clark's position that PTSD is a chronic condition that can impact an individuals' day-to-day decision making, nor do we discount his contention that his PTSD did have an impact on his overall condition on the day he committed the underlying offenses. However, it remains that the trial court had discretion to weigh the mitigating effect of Clark's PTSD diagnosis

11

and its associated impacts against the undisputed aggravating factors in deciding the appropriate sentence. On this record, we cannot say that the trial court abused that discretion.[4]

## II. The Trial Court Did Not Err in Imposing Government Assessments and a Restitution Fund Fee

The trial court imposed a restitution fund fine under section 1202.4, subdivision (b) in the amount of $2,000—reduced from the $6,600 restitution fine that the probation officer recommended—as well as a court operations assessment of $80 pursuant to section 1465.8, and a criminal conviction assessment of $60 pursuant to Government Code section 70373.

Clark relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) to assert the trial court erred by imposing these fines and fees without first determining his ability to pay them.[5] He concedes that his trial counsel did not object to the imposition of the restitution fine or the government fees, and

---

[4] We reject Clark's contention that the trial court's failure to adequately consider his PTSD diagnosis violated his Fourteenth Amendment right to due process for the same reasons.

[5] The defendant in *Dueñas* was an indigent homeless mother of young children who pleaded no contest to driving with a license that was suspended due to outstanding citations. (*Dueñas, supra,* 30 Cal.App.5th at p. 1160.) The trial court imposed a restitution fine and assessments. The Court of Appeal held it was fundamentally unfair to impose assessments under section 1465.8 and Government Code section 70373 without first determining the defendant could pay them. (*Dueñas,* at p. 1168.) Likewise, the trial court must stay the execution of a restitution fine unless the court determines the defendant can pay. (*Id.* at p. 1172.) Since, numerous courts, including this one, have disagreed with certain aspects of the *Dueñas* decision, and the matter is currently pending review by the California Supreme Court. (See, e.g., *People v. Kopp* (2019) 38 Cal.App.5th 47, 96–98, review granted Nov. 13, 2019, S257844; *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946.)

12

did not assert that he did not have the ability to pay them. The People assert the claims are forfeited as a result.

We agree that, under ordinary rules of appellate procedure, Clark has forfeited these claims on appeal. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 ["Given that the defendant is in the best position to know whether he has the ability to pay, it is incumbent on him to object to the fine and demonstrate why it should not be imposed."]; see also *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053–1054 (*Lowery*) [relying on *Frandsen*].) Clark contends his claims are cognizable as legal claims on appeal despite his failure to raise the issue in the trial court, in part because the trial court was aware that he was homeless and indigent. He asserts further, to the extent we would find otherwise, that his trial counsel provided ineffective assistance of counsel by failing to object. We are not persuaded. Courts have routinely held that a defendant must raise the issue in the trial court and Clark has not demonstrated that his trial counsel had no satisfactory explanation for the decision not to seek an ability to pay determination. Rather, as we explain next, counsel was likely aware that Clark did have the ability to earn future wages, both in and out of prison.

In *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), the appellate court concluded, even if the defendant had not forfeited the issue, any error in the trial court failing to consider his ability to pay was harmless beyond a reasonable doubt and therefore did not require reversal or remand. (*Id*. at p. 1075.) The court explained: " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.]

13

This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody.]' " (*Id*. at p. 1076.)

Here, as in *Aviles,* we can infer that Clark "has the ability to pay the fines and fees imposed upon him from probable future wages, including prison wages." (*Aviles, supra,* 39 Cal.App.5th at p. 1076; accord *Lowery, supra,* 43 Cal.App.5th at pp. 1060–1061.) "Prison wages range from $12 to $56 per month, depending on the prisoner's skill level," and "[t]he state may garnish between 20 and 50 percent of those wages to pay the section 1202.4, subdivision (b) restitution fine." (*Aviles,* at p. 1076.) Moreover, Clark will presumptively be released from prison in less than five years and will have the ability to continue to earn wages thereafter.

Although Clark was not working at the time of his arrest, the record reveals that he had a prior work history and had previously been able to "build up a substantial savings account." Other than his PTSD diagnosis—which he had during the time period in which he was working—the record does not suggest that Clark had any disability or condition that would prevent him from seeking employment upon his release. Indeed, Clark told the probation officer, in the next 10 years, he "he would like to accumulate a healthy stock portfolio and enjoy retirement." "Based on this record, appellants' circumstances are vastly different from the probationer in *Dueñas*." (See *Lowry, supra,* 43 Cal.App.5th at p. 1060.)

Accordingly, even if the trial court erred by failing to make a direct finding as to his ability to pay the fines and fees, we conclude the error does not require reversal or remand.

14

## DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.